110　193
153　142

## E. T. RIEGEL v. AMERICAN LIFE INS. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued April 9, 1890.
Re-argued January 7, 1891—Decided February 23, 1891.
[To be reported.]

(a) A creditor, who held an insurance policy for $6,000 on the life of his debtor, made an arrangement with the insurance company, under which said policy was surrendered, and a paid-up policy for $2,500 issued and accepted in lieu thereof. At the time of this transaction, the debtor had been dead for ten days, but this fact was unknown to either party.

(b) Upon learning of his death, the policy-holder filed a bill to set aside the transaction and re-instate the policy for $6,000, averring that its surrender, and the acceptance of the paid-up policy, were made "inasmuch as the premiums were becoming burdensome, . . . . and inasmuch as no information could be had whether the insured was living or dead:"

1. The plaintiff having appealed from a decree sustaining a demurrer to the bill, and having moved in the Supreme Court for an amendment averring that in making the exchange of policies both parties acted on the supposition that the insured was alive, the facts before the court presented a clear and strong case for equitable relief.

2. The contract of exchange not appearing to be in the nature of a com-

Statement of Facts

promise of a doubtful claim, but to be a bargain made under the influence of a mutual mistake of facts, to which it would be grossly inequitable to hold the plaintiff, the decree was reversed with direction that the defendant plead to or answer the bill.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 228 January Term 1890, Sup. Ct.; court below, No. 350 September Term 1889, C. P. No. 4, in Equity.

On October 3, 1889, service was accepted for the defendant of a bill in equity filed by E. Theresa Riegel, administratrix of the estate of Jacob Riegel, deceased, against the American Life Insurance Company.

The plaintiff's bill averred, in substance, that Jacob Riegel, being a creditor of Henry G. Leisenring, took out a policy of insurance upon Leisenring's life from the defendant company, for the sum of $6,000, at a yearly premium of $153.90; that Jacob Riegel died on January 4, 1880, having paid all premiums maturing prior to that date, and the plaintiff, as his administratrix, had paid all premiums accruing thereafter until April 19, 1889; that the debt due from Leisenring, with the interest accrued thereon, largely exceeded the amount of $6,000; that Leisenring left the city of Philadelphia in the year 1876 and his whereabouts became unknown to the plaintiff, and "inasmuch as premiums were becoming burdensome to the estate represented by your oratrix, and inasmuch as no information could be had whether the said Leisenring was living or dead, your oratrix, on the twentieth day of March, 1889, surrendered to the American Life Insurance Company, the defendant aforesaid, the policy of insurance for $6,000, which was numbered policy No. 31,425, and in lieu thereof received from the said company a paid-up policy for $2,500;" that within a short time subsequent to said transaction, the plaintiff ascertained that Leisenring died on or about March 10, 1889, and thereupon demanded of the defendant the re-instatement and return to her of the policy for $6,000, in order that she might prepare proofs of death thereunder and receive payment of the amount of that policy, but the defendant refused to comply with such demand; wherefore, the plaintiff was unable, by reason of ignorance of the terms of said policy, to prepare proofs of death thereunder and to obtain payment

The prayers of the bill were for discovery; for the re-instatement and enforcement of the policy for $6,000; that the defendant be required to pay to the plaintiff the full amount of said policy; and for general relief.

The defendant filed a general demurrer to the bill, and after argument thereof, the court, THAYER, P. J., sustained the demurrer in the following opinion:

The facts as they appear in the plaintiff's bill are, that Jacob Riegel, being a creditor of one Henry G. Leisenring in a sum exceeding $6,000, took out a policy of insurance on his debtor's life, in the defendant company, for the sum of $6,000. The annual premium reserved was $153.90. Jacob Riegel died on January 4, 1880, and after his death the premiums continued to be paid by his administratrix, the present plaintiff, until April, 1889. Leisenring, the debtor, on whose life the policy was taken out, left Philadelphia in 1876, after which his whereabouts became unknown. The payment of annual premiums having become burdensome to the plaintiff, and the fact being unknown whether Leisenring was living or dead, the plaintiff on March 20, 1889, made an agreement with the defendants, whereby the original policy was surrendered by her, and the company in consideration thereof issued to her in lieu thereof a paid-up policy for $2,500. Some time after this, it was ascertained by the plaintiff that Leisenring had died on or about March 10, 1889, and before the new agreement had been made or the new policy issued. The plaintiff, therefore, claims that the new agreement with the defendant was made under such a mistake of fact as entitles her to be relieved against it in equity, and to have the original contract of insurance re-instated and enforced.

The chancery jurisdiction to relieve a party from a contract which has been entered into in consequence of a mutual mistake of essential facts that constituted the motive for entering into it, is now well defined by many decisions, as are also the limits of the doctrine, and the qualifications which prevent its abuse or its unjust application. The reason of the doctrine is well stated by GIBSON, J., in Perkins v. Gay, 3 S. & R. 331, where he says that in such cases the parties proceed under an idea that the fact which is the inducement to the agreement is

in a particular way, and give their assent on conditions that are falsified by the event; and he cites from the old reports, as illustrations, the cases of Turner v. Turner, 2 Ch. R. 81; Bingham v. Bingham, 1 Ves. Sr. 126 ; Gee v. Spencer, 1 Vern. 32 ; Pusey v. Desbouvrie, 3 P. Wms. 316 ; Lansdown v. Lansdown, Mos. 364, and then adds this qualification:

" But where the parties treat upon the basis that the fact which is the subject of the agreement is doubtful, and the consequent risk each is to encounter is taken into consideration, in the stipulations assented to, the contract will be valid, notwithstanding any mistake of one of the parties, provided there be no concealment or unfair dealing by the opposite party that would affect any other contract: Cann v. Cann, 1 P. Wms. 726 ; Pullen v. Ready, 2 Atk. 587 ; Jones v. Randall, Cowp. 37."

Every wager, every policy of insurance, and every compromise of a doubtful right depends, as he well adds, upon this principle. I have not seen the doctrine anywhere more succinctly or more clearly stated, than in this opinion of GIBSON, J., in our own case of Perkins v. Gay. In Miles v. Stevens, 3 Pa. 37, it is said it is not every mistake which will enable the party to avoid the contract; for, to have this effect it must be of its essence, the sine qua non of the contract; or, as it is expressed, the efficient cause of its concoction. A court of equity relieves in such cases upon the ground of a material mistake going to the essence of the contract: Geiger v. Cook, 3 W. & S. 270. Thus, for example, if one sell a messuage to another which was at the time swept away by a flood or destroyed by an earthquake, without any knowledge of the fact by either party, a court of equity will relieve the purchaser: Hitchcock v. Giddings, 4 Price 135. Yet even ignorance of a material fact will not in every case enable a party to avoid a contract, as in the case of Fox v. Mackreth, 2 Bro. C. 420, (1 White & Tudor's Leading Cases, 72,) where A, knowing that there was a mine in the land of B of which B was ignorant, bought the land, without disclosing the fact to B, for a price in which the mine was not taken into consideration ; because from the nature of the transaction A was not bound to disclose to B what he knew about the land.

Equity will only relieve in cases where it would be against

equity and good conscience for a party to retain an advantage founded in a clear mistake of fact and resulting in a total or material failure of consideration to the other party. Where both parties treat upon the basis of the fact being doubtful, and the transaction shows that both parties took the risk of the doubt, equity will not interfere, but will leave the parties where they were. This is the result of the numerous and varied cases upon this subject, very many of which are cited in 1 Story's Eq. J., § 140 to § 152, and the notes thereto. The Pennsylvania cases are all to the same effect. I may mention, in addition to those already cited: Bellas v. Hays, 5 S. & R. 427; Horbach v. Gray, 8 W. 497; Jenks v. Fritz, 7 W. & S. 201; Gibson v. Rolling Mill Co., 3 W. 32; Bishop v. Reed, 3 W. & S. 265; Mays v. Dwight, 82 Pa. 462; McAninch v. Laughlin, 13 Pa. 371. Most of the cases proceed upon the ground of a failure of consideration, induced by a material mistake made by the parties with regard to the essential facts, except for which the contract would not have been entered into.

In the case now before us, as it is presented in the plaintiff's own narrative of the facts in her bill, we fail to see that the contract to substitute a new paid-up policy in the place of the old one, which required the payment of annual premiums in order to keep it alive, was induced by any such mistake of the facts as constitutes in equity a ground for relief. There is not in the bill any allegation of any such mistake, but only that "premiums were becoming burdensome" and "no information could be had whether Leisenring was living or dead." That is the reason she gives for making the new contract. In this doubtful state of the facts, she thought it to the advantage of the estate to get a paid-up policy for a less sum, in consideration of being relieved from the payment of future premiums. It is precisely the case, therefore, put by the court in Perkins v. Gay, 3 S. & R. 331, where the parties treat upon the basis that the fact which is the subject of agreement is doubtful, in which case the contract is to be held valid, there being no concealment or unfair dealing by the opposite party.

The new contract, here, was not founded upon any mistaken fact or belief regarding the then condition of Leisenring, but was, according to the plaintiff's own showing, based upon the

Opinion of Court below.

doubts which were entertained upon that subject. It does not appear that she had any belief about it, one way or another, but, being in a state of doubt upon the subject, and not knowing how long that doubt might endure, she came to the conclusion that it would be advantageous to stop future premiums by taking out a paid-up policy for a smaller sum. It does not appear that the defendants had any more knowledge than she had about Leisenring, or that she was induced by any persuasion of theirs to substitute the new contract for the old. It was therefore a novation for which there was a valuable consideration moving to each of the parties. Both parties, by means of it, diminished their liabilities, she for the future premiums, they for the amount insured. Both were willing to take their chances with the doubts surrounding the facts. Neither had any advantage over the other. It was like an insurance of a ship, lost or not lost, in which both parties treated upon equal terms and at arms length, and each was willing to stand the hazard of the chances. [That Leisenring was dead when they made their contract, cannot now annul the contract,] [3] any more than the fact that the ship was lost when the insurance was made can avoid the insurance. [It was not a contract induced by a mistake about the facts, but a contract made in view of doubtful facts, and because of the doubtful · facts.] [4] [It was in the nature of a compromise, founded upon the doubts which existed, not upon any mistake of the facts.] [5] Such a case does not fall within the category of cases entitled to relief in equity, for the reason that to relieve against it would be to undo a perfectly valid contract, a contract which cannot, in any sense, be said to be unconscionable or against equity, which was as fair for one side as the other, and upon the performance of which the defendants can insist without being subject to any charge of bad faith, or of taking any undue advantage.

The demurrer is sustained, and the bill dismissed, the plaintiff to pay the costs.

—Thereupon the plaintiff took this appeal specifying that the court erred:

1. In sustaining the demurrer.

2. In dismissing the bill.

3–5. In the portions of the opinion embraced in [  ] [3 to 5]

Arguments.

—The case was first argued on April 9, 1890, before PAXSON, C. J., STERRETT, CLARK, WILLIAMS and MITCHELL, JJ.

*Mr. William W. Porter,* for the appellant:

1. If the plaintiff is entitled to relief at all, a court of equity alone can grant it; and if the surrender of the first policy and the acceptance of the paid-up policy were induced by and based upon a mistake by the parties of a material fact, the jurisdiction of equity is exclusive and complete: § 39, act of June 13, 1840, P. L. 671; Horbach v. Gray, 8 W. 492; Jenks v. Fritz, 7 W. & S. 201; Gibson v. Rolling Mill Co., 3 W. 32. The dealings between the parties being based upon the assumption that Leisenring was still alive, this assumption constituted such a mutual mistake as equity will relieve against, and the contract is necessarily void and must be set aside: Bispham's Eq., §§ 190, 191; Hitchcock v. Giddings, 4 Price 135; Allen v. Hammond, 11 Pet. 63.

2. The contract is not, like one of fire or marine insurance, a mere contract of indemnity, but is an engagement to pay a certain sum at the death of a person: Bliss on Life Ins., § 3; Scott v. Dickson, 108 Pa. 6; Corson v. Garnier, 15 W. N. 451. The existence of the person to be insured is essential to a valid contract of life insurance, and the second policy, issued to the plaintiff, was invalid from the very nature of the contract: Mutual Ins. Co. v. Ruse, 18 Ga. 334; Lefavour v. Insurance Co., 1 Phila. 558. However, in any event, the surrender of the old policy was without consideration. The plaintiff actually released the company from a debt of $6,000 which was due her, in consideration of an engagement to pay $2,500 upon the happening of an event which had already come to pass.

3. This was not the case of a contract made in view of doubtful facts. The illustration mentioned by the learned judge, of the insurance of a ship, lost or not, wholly destroys his argument on this point; for, in the case of such an insurance, the policy always contains the words "lost, or not lost;" and if the parties in the present instance had agreed that the new contract should stand, whether Leisenring was then dead or alive, the agreement should have been so expressed in the new policy. That policy, as issued, was as obviously conditioned upon the assumption of life as was the original policy.

Arguments.

Nor did the question of Leisenring's possible death in any way enter into the calculations of the company when issuing the paid-up policy. The change to paid-up insurance simply regarded the premiums paid as a single advanced payment, entitling the beneficiary to a proportional amount at death. The amount was therefore a question of figures only, and nothing was conceded to the plaintiff which would not have been as readily conceded had Leisenring been alive and at hand.

*Mr. Henry Hazlehurst*, for the appellee:

1. To say that the plaintiff acted under a mistake, is absurd, for she says herself in the bill that she made the surrender and accepted the paid-up insurance, "inasmuch as no information could be had whether the assured was living or dead." No one is mistaken about a thing that he has no knowledge of at all. As the plaintiff herself stated the case in her bill, the contract was made in view of the doubt existing as to Leisenring's life. Both parties took the risk of the doubt, and in such a case equity will not interfere to make a better bargain for one of them: Cann v. Cann, 1 P. Wms. 726; Pullen v. Ready, 2 Atk. 587; Jones v. Randall, Cowp. 37; Perkins v. Gay, 3 S. & R. 331; Miles v. Stevens, 3 Pa. 37; Geiger v. Cook, 3 W. & S. 270; Fox v. Mackreth, 2 Bro. C. 420 (1 White & T. L. Cas. Eq., 72); 1 Story Eq. J., §§ 140–152; Bellas v. Hays, 5 S. & R. 427; Horbach v. Gray, 8 W. 497; Jenks v. Fritz, 7 W. & S. 201; Gibson v. Rolling Mill Co., 3 W. 32; Bishop v. Reed, 3 W. & S. 265; Mays v. Dwight, 82 Pa. 462; McAninch v. Laughlin, 13 Pa. 371.

2. Most of the later Pennsylvania cases have been complicated by questions of protest and the exaction of penalties; but in McCrickart v. Pittsburgh, 88 Pa. 133, the court said broadly that where there is no mistake, or fraud, a voluntary payment cannot be recovered back on the mere ground that the one party was under no obligation to pay and the other party had no right to receive. Under that rule, if the insured had died immediately upon taking out the policy, and the plaintiff, in ignorance of that fact, had regularly paid the premiums for thirteen years, no one would suppose that she could recover them back. Yet that would be a case which, compared with the present one, might well appeal to our sense of justice. And the plaintiff's

bill exposes her to the charge of extreme negligence. In view
of her speedy ascertainment of the facts, after the transaction
was closed, it is fair to suppose that she made no inquiry be-
fore that, and that had she done so she would have discovered
enough to put her on her guard.

An order for a re-argument having been made, the case was
argued a second time on January 7, 1891, before a full bench,
by the same counsel.

On the re-argument, the plaintiff's counsel filed at the bar of
the Supreme Court an amendment to the bill, adding to the
averment the language of which is quoted in ipsissimis verbis
in the statement of facts, ante, 194, these words: " The parties
acting in respect to the transaction on the basis that the said
Leisenring was still alive."

OPINION, MR. JUSTICE WILLIAMS:

The decree now before us was made upon the hearing of a
general demurrer to the plaintiff's bill. The demurrer ad-
mitted the truth of every fact alleged in the bill, but denied
that, taken as stated, the facts were sufficient to entitle the
plaintiff to relief in a court of equity. To determine whether
this decree was right, it becomes necessary to look into the
bill in order to ascertain what facts were set forth as the basis
of the relief sought. These may be stated as follows:

1. That Jacob Riegel was in his lifetime a creditor of one
Leisenring, and that to secure his claim he took out a policy of
insurance on the life of his debtor, in the company against
which the bill was filed, for six thousand dollars, paying an
annual premium therefor of one hundred fifty-three dollars and
ninety cents.

2. That Riegel paid the premiums eight or ten years, and
died, and that the plaintiff, his widow and administratrix, has
continued to pay them since, down to the death of Leisenring.

3. That Leisenring died on the tenth of March, 1889, al-
though the fact was not known at the time to Mrs. Riegel or
the insurance company, nor had either known his whereabouts
for thirteen years.

4. That ten days after Leisenring's death, and while the
fact was yet unknown, Mrs. Riegel surrendered the policy on

his life, and accepted a new policy for $2,500, as a paid-up policy, in order to be relieved from the burden of the annual premium of one hundred fifty-three dollars and ninety cents on the first policy.

5. That in making this exchange "both parties to the transaction were acting in respect thereto on the basis that Leisenring was alive." This averment was added by amendment on the argument:

6. That when she learned that Leisenring was dead, before the exchange and the surrender of the original policy, she demanded that it be returned to her, but that the company refused to return it.

The case presented on these facts was that of a contract entered into under the influence of a mutual mistake, and a claim for relief from such contract. The mistake was in relation to the fact of Leisenring's death. Both parties evidently supposed, and acted on the supposition, that he was alive, and that the annual premiums upon his life, which had become burdensome to Mrs. Riegel, must be continued indefinitely until his death should take place. As it had become difficult for her to pay these premiums, the only way in which she could be relieved from them was to surrender her policy and accept a paid-up policy for such smaller sum as the premiums already paid would purchase. Rather than take the risk of losing the entire amount of the policy by her inability to keep up the annual payments, she surrendered her policy for six thousand dollars, and accepted in lieu of it a paid-up policy for two thousand five hundred dollars. This was the contract she made while in ignorance of Leisenring's death. At the time she made it she was already relieved from the burdensome premiums, and the entire amount of the policy was honestly due her from the company. What was the effect of the mistake upon her? Simply to take from her the difference between the two policies and give her absolutely nothing for it. She surrendered a policy for six thousand dollars, on which the liability of the company was already fixed, and received one for two thousand five hundred dollars to secure relief from a burden already removed. The company parted with nothing. She secured nothing. The whole transaction was a mistake, and, if the decree of the court below stands, the result will be

to take three thousand five hundred dollars from Mrs. Riegel, and give it to the insurance company.

These facts seem to us to present a clear and a strong case for equitable relief, so strong, indeed, that a mere statement of them is the only argument necessary for its support. The duty of a chancellor to relieve in cases of mutual mistake is so well settled that no citation of authorities can be needed. Among the more recent cases, however, in which the subject has been discussed and relief granted, are Babcock v. Day, 104 Pa. 4; Wilson's App., 109 Pa. 606; Goettel v. Sage, 117 Pa. 298.

The learned judge, who heard this case in the court below and who is thoroughly familiar with the principle to which we have referred, seems to have been misled in regard to the facts set up in the bill. He treats the arrangement made between Mrs. Riegel and the company on the twentieth of March as a compromise of a claim against the company for the alleged death of Leisenring, which Mrs. Riegel was unable to establish, because unable to show the death. As the fact of the death, and the consequent liability of the company on the policy, were uncertain, it was a case for the application of the doctrine that the adjustment of a doubtful claim constituted a valid consideration for the surrender of the policy, and the acceptance of the new one, and upon this theory the decree was entered. But it nowhere appears that Mrs. Riegel made any claim on the company, or supposed that she had any. She was asking relief from future payments of premiums on a policy on which she supposed future payments would have to be made, and to get this relief she was willing to sacrifice more than one half of the sum insured. The company was willing, in consideration of the large reduction of its liability, to give her a policy for what her payments would purchase, and relieve her in future. This is an exchange often made, and adjusted by well-settled rules. It was a compromise of nothing. We do not doubt the correctness of the rule applied by the learned judge in cases to which it is fairly applicable, but this is not one of them. The plaintiff distinctly avers that she did not know of the death of Leisenring until some ten days after the exchange of policies was effected, and that " both parties to the transaction were acting in respect thereto on the basis that Leisenring

was alive." She distinctly avers that the object of the arrange-
ment was to secure relief for herself from the indefinite pay-
ment of premiums that had become burdensome to her; that
the new policy was accepted for that reason, and the old one
surrendered, at a time when, had she known the fact, she was
entitled to demand the entire sum upon which she had so long
and so steadily paid the burdensome premiums. Upon these
facts, if the attention of the learned judge had not been di-
verted from them, we feel sure that he would have reached the
conclusion that we have reached, that it would be grossly in-
equitable to hold the plaintiff to a bargain made under the in-
fluence of a mistake of facts like that before us. This mistake
the demurrer admits. If there had been any circumstance
which the defendant could have set up to show that a correc-
tion of this mistake at this time would be inequitable, it should
have been shown to the court by answer. If such circum-
stances do exist, they may yet be presented, as this case goes
back to enable the defendant to take defence upon the merits.

The decree is reversed, and the record remitted,
with direction that the defendant plead to or
answer the complaint in the bill; the costs of
this appeal to be paid by the appellee.

MR. CHIEF JUSTICE PAXSON, dissenting:

I would affirm this judgment upon the opinion of the learned
judge of the court below. I cannot add anything to what he
has so well said.

Mr. Justice CLARK and Mr. Justice MITCHELL noted their
concurrence in the dissent by the Chief Justice.

On April 27, 1891, a motion for a re-argument was refused.