NEW YORK LIFE INSURANCE COMPANY, Appellant, v. CHIT-
TENDEN & EASTMAN and C. W. WALDECK.

**Administration of estate of absentee.**  While as a general rule a
1    probate court has no jurisdiction to administer the estate of a
person still living, yet it may be provided as in Code, section
3307, that where a person has absented himself from the State
and concealed his whereabouts from his family for a series of
years his property may be administered upon in the same form
of proceeding as that of a deceased person; and the adminis-
tration will be valid against the absentee and all persons in-
terested, although he is in fact still living.

**Insurance:** COMPROMISE AND SETTLEMENT: ESTOPPEL.  Where an as-
2    sured has absented himself from the State and concealed his
whereabouts for a period of seven years, and rather than con-
test the question of his death the insurance company elects to
pay the loss to a duly appointed administrator, it amounts to a
compromise and settlement based on the assertion of his
death and is binding and conclusive on the company, though
it may afterwards appear he was still living.

**Payment:** MISTAKE: RECOVERY BACK.  The rule that a payment
3    made under a mutual mistake may be recovered back is not
applicable, where, under an assumption of facts known to
both parties to be doubtful there has been a voluntary pay-
ment.

**Principal and agent:** SCOPE OF AUTHORITY.  Where an insurance
4    agent has been authorized to deliver drafts in settlement of a
death claim, his acts and declarations in effecting a settlement
are binding upon the company, notwithstanding any limitations
contained in the policy.

*Appeal from Des Moines District Court.*— HON. W. S.
WITHROW, Judge.

TUESDAY, JUNE 4, 1907.

ACTION to recover back the money paid on a life insur-
ance policy under mistake as to the death of the insured.

On trial without a jury the court rendered a judgment for defendants, from which plaintiffs appeal.— *Affirmed.*

*Seerley & Clark* and *James H. McIntosh,* for appellant.

*Blake & Wilson* and *Power & Power,* for appellees.

McCLAIN, J.— Two policies were issued by plaintiff to one Jarvis on the 9th day of September, 1889, each for $1,350, payable on his death to his wife, or, if not living, to his children, or, if no children should survive, then to the executors, administrators, or assigns of the insured. Prior to the 25th day of December, 1894, the wife of the insured had died, and he was without children, and he had assigned the policy of the defendants Chittenden & Eastman, a partnership to whom he was indebted, and forwarded a copy of this assignment to the plaintiff. It appears, also, that prior to the assignment to Chittenden & Eastman there had been another assignment by way of security to the Iowa State Savings Bank which had not been forwarded to the plaintiff, and was not known to it when the assignment to Chittenden & Eastman was received and recognized. On the last above date Jarvis, the insured, disappeared from his home in Burlington, and was not heard of for more than seven years. At the April term, 1902, of the district court of Des Moines county, the Iowa State Savings Bank applied as creditor for the appointment of an administrator for the estate of Jarvis, alleging his disappearance, and that his whereabouts had continued unkn. wn to his friends and the members of his family, and that he had not been heard from. Proper proceedings were had, under which defendant Waldeck was appointed administrator of the estate of Jarvis, and a claim was then made jointly by Waldeck as administrator and Chittenden & Eastman as assignees for payment of the policies held by Jarvis in the plaintiff company; and proofs of death were furnished by Waldeck, in

which were the following statements:   " (7) Date of death:
During Christmas week, 1894.   (8) Place of death:  The
assured disappeared, and since that date he has not been
heard from.   There was nothing in his family or business
relations to explain his absence.   His brother at the time of
his disappearance was a resident of Burlington, Iowa, and
has ever since continued to reside there and the most pleas-
ant relations existed between them. . . . (10) In
what capacity, or by what title, do you claim this insurance?
As administrator of the estate of the assured."   Negotia-
tions were had between attorneys representing the adminis-
trator and an agent of the insurance company in which it
was insisted for the administrator that the insurance money
was due and payable, and that, unless it was paid, suit would
be instituted on the policies.   Subsequently two drafts for
the amount specified in the policies payable jointly to Chit-
tenden & Eastman, assignees, and C. W. Waldeck, adminis-
trator, were tendered to the attorneys for the administrator
by the agent of the plaintiff, with the condition that the ad-
ministrator and assignees should give a bond of indemnity to
the company for the return of the money in case it should
be subsequently discovered that Jarvis was not dead at the
time of this settlement.   The attorneys for the administra-
tor refused in behalf of their client to furnish such bond,
and thereupon the drafts were delivered without further in-
sistence upon this condition.   The proceeds of the drafts
were paid in part to the Iowa State Savings Bank, and in
part to Chittenden & Eastman.   It is conceded that after
this payment and the distribution of the proceeds thereof by
the administrator Jarvis was alive, and, on the discovery
of this fact in April, 1905, the company tendered back the
policies of insurance and demanded the return of the money
paid, and on refusal this suit was instituted.   As the pay-
ment of the insurance was by drafts made jointly to Chit-
tenden & Eastman and Waldeck, this suit is no doubt prop-
erly instituted against them jointly, although the money has

been in part distributed to the Iowa State Savings Bank, which is not a party to this action; but, as our conclusions in the case are not dependent on the extent of the liability, respectively, of Waldeck and Chittenden & Eastman, we shall give that subject no further consideration.

I.    If Waldeck as administrator was entitled to maintain a suit against plaintiff under the authority given him in the administration proceeding and to recover the insur-

1. ADMINISTRA-
TION OF ES-
TATE OF AB-
SENTEE.

ance money which was in fact paid, plaintiff had no right to recovery as against him individually, for he had done what by law he was authorized to do, and could not be held individually liable. The first question, then, as we think, is whether the proceedings for administration on the estate of Jarvis were valid. It seems to be conclusively settled by adjudications that a probate court acquires no jurisdiction by proceeding to administer on the estate of a person on the ground that he is dead if in fact he is alive, and such proceedings are entirely invalid, and any judgments or orders made in pursuance thereof, and any action taken thereunder, are absolutely void as against the person who is erroneously adjudged to be dead. Without citing the many authorities supporting this proposition, it is sufficient to say that any such proceeding, if sustained, would result in depriving the person erroneously adjudged to be dead of his property without due process of law. *Scott v. McNeal,* 154 U. S. 34 (14 Sup. Ct. 1108, 38 L. Ed. 896).

But, in the exercise of its jurisdiction over property within the State, it may be provided by the legislature that after the absence of the owner unheard of for a specified period such property may be administered upon in the same form of proceeding as is provided for administration upon the property of a person deceased, and such administration will be valid as against the absentee and all persons interested, although he is in fact not dead. *Cunnius v. Reading School District,* 198 U. S. 458 (25 Sup. Ct. 721, 49 L. Ed.

1125). Section 3307 of our Code provides for such an administration on the estate of one who has absented himself from the State and concealed his whereabouts from his family for a period of seven years, and under the decision last above cited we have no doubt that this section is constitutional and provides for a proceeding which may properly be resorted to in such cases, and which is conclusive on the absentee and those claiming under him. The administration granted as to the property of Jarvis was in accordance with the provisions of this section, and we think it was valid.

Waldeck as administrator had the right, therefore, to receive from the plaintiff the proceeds of the policies on Jarvis' life so far as such proceeds were payable to his ad-

2. INSURANCE: compromise and settlement: estoppel.

ministrator, and, as Chittenden & Eastman assented to such payment and to the distribution of the proceeds by Waldeck as administrator, there was a final settlement under the policies, which, if Jarvis had been in fact dead, would have been binding on all parties. It may be conceded that the policies did not mature simply on the granting of administration on the estate of Jarvis as an absentee. The conditions of the policies were that the sums named therein should be paid on Jarvis' death, and, as already indicated, the administration was not conclusive as to the fact of his death, but only as to the fact of his absence and the concealment of his whereabouts from his family for seven years. But the facts which justified the administration would also as evidence have established a right of action on the policies by the administrator and the assignees to recover the insurance money, for those facts would have been sufficient evidence of death to sustain a judgment based on that fact. The plaintiff company was thereupon brought face to face with the question whether it would pay the amounts of the policies or stand suit thereon, and question the fact of the death of Jarvis.

It may further be suggested that the obligation of the plaintiff under its policies was to pay the amount named

therein to the proper beneficiary within sixty days after due notice and satisfactory proof of death, and that proof of death stating the facts which, if established, would show the liability of the company was furnished, and no objection thereto on the part of the company was made.    Under these conditions, and for the purpose of avoiding an action on the policies, the plaintiff company elected to pay over the amount thereof to the persons entitled to receive the insurance money if Jarvis were in fact dead, and this compromise and settlement of a claim based on the assertion of his death was, we think, binding and conclusive on the company.    Had a judgment been secured in an action by the administrator with authority to represent the rights of all persons interested in the proceeds of the policies, such judgment would have been conclusive as to the death of Jarvis, and the company could not, after paying the amount of such judgment, have recovered back the money paid on discovering that the essential fact in issue in the case, to wit, the death of Jarvis, had been erroneously adjudicated.    The judgment would have been conclusive as to that fact.    Therefore we think that a settlement by which the money was paid for the purpose of avoiding a suit in which such a judgment might have been rendered is also conclusive, and that plaintiff cannot now recover back the money thus paid.

In a case quite similar in its essential facts to the one now before us the Court of Appeals of New York held that an arrangement for the payment of the amount of the policies entered into in view of the assumed death of the assured as indicated by his absence unheard of for more than seven years was binding after it had been ascertained that he was still living; such arrangement having been made with regard to the chances of success of the claimant under the policy at the time when the insured was thought to be dead.    In that case, as in this, " clearly but one thing was dealt with or could be in the agreement of settlement, to wit, the possibility that the insured should prove to be alive."    *Sears v.*

*Grand Lodge,* 163 N. Y. 374 (57 N. E. 618, 50 L. R. A. 204). In the case before us there was no compromise, it is true, as to the amount to be paid; but there was a compromise on the question whether anything was payable, and for the purpose of avoiding litigation the plaintiff elected to make payment. A voluntary payment is usually conclusive, and cannot be recovered back. *Manning v. Poling,* 114 Iowa, 20; *James v. Dalbey,* 107 Iowa, 463; *Davenport & St. P. R. Co. v. Rogers,* 39 Iowa, 298; *Bailey v. Paullina,* 69 Iowa, 463; *Baldwin v. Foss,* 71 Iowa, 389; *Lyman v. Lauderbaugh,* 75 Iowa, 481; *Weaver v. Stacey,* 93 Iowa, .683; *Windbiel v. Carroll,* 16 Hun. (N. Y.), 101; *National Life Ins. Co. v. Jones,* 1 Thomp. & C. (N. Y.), 466.

II. Counsel for appellant insist that this payment was one made under a mutual mistake of fact, and that in accordance with a well-recognized equitable principle money

3. PAYMENT: mistake: recovery back.

thus paid may be recovered back. The rule thus invoked is not applicable, however, where under an assumption of fact known to both parties to be doubtful there has been a voluntary payment in extinguishment of a claim. The principle is thus stated in 1 Pomeroy, Equity Jurisprudence (2d Ed.) section 855:

Where parties have entered into a contract or arrangement based upon uncertain or contingent events purposely as a compromise of a doubtful claim arising from them, . . . and there is . . . an absence of bad faith, violation of confidence, misrepresentation, concealment, and other inequitable conduct, . . . if the facts upon which such agreement or transaction was founded . . . turned out very differently from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to a matter of fact and not of law, is not such a mistake within the meaning of the equitable doctrine as entitles the disappointed party to any relief. . . . In such classes of agreements and transactions the parties are supposed to calculate the chances, and they certainly assume the risks.

And at another place in the same work (section 849) the author uses this language: "It should be carefully observed that this rule [allowing recovery of money paid under mistake] has no application to compromises where doubts have arisen as to the rights of the parties, and they have intentionally entered into an arrangement for the purpose of compromising and settling those doubts. Such compromises, whether involving mistakes of law or fact, are governed by special consideration." The foregoing quotations are made part of the opinion in *Sears v. Grand Lodge,* 163 N. Y. 374 (50 L. R. A. 204), as applicable to a case very similar to the one before us. In *Riegel v. American Life Insurance Co.,* 140 Pa. 193 (21 Atl. 392, 11 L. R. A. 857, 23 Am. St. Rep. 225), and on a subsequent appeal, 153 Pa. 134 (25 Atl. 1070, 19 L. R. A. 166), it was decided that the holder of a policy accepting its surrender value under the assumption that the assured was still alive might, on proving that in fact the insured had already died, recover the balance of the face of the policy which had matured by the death of the assured without the knowledge of either party. But it is evident that, under these circumstances, there was a mistake as to a fact not within the contemplation of either party in entering into the arrangement. In the case before us the question whether Jarvis was dead was distinctly within the contemplation of both parties, for it was expressly recited in the proof of loss that he had been absent for more than seven years, and had not been heard of within that time. The only question of controversy between the parties in determining whether or not the insurance money should be paid was as to whether Jarvis was dead, and the plaintiff conceded its liability by voluntarily paying the claim. In the absence of fraud or concealment, the means of knowledge as to the fact in controversy being equally accessible to each party, the payment is conclusive. *Eagan v. Ætna F. & M. Ins. Co.,* 10 W. Va. 583; *Mutual Life Ins. Co. v. Wager,* 27 Barb. (N. Y.), 354.

III.   With reference to the consideration of the nego-
tiations between the agent of plaintiff and the attorney for
the administrator, it is contended that the acts and state-
ments of the plaintiff's agent were not binding
upon it, for the reason that they are not shown
to have been within the scope of his authority,
which was limited by stipulations in the policy.   It is
enough to say that this agent had authority to represent the
company in delivering the drafts to the defendants in pay-
ment of the claims under the policies, and that what he did
and said in connection with the effecting of this settlement
must be binding upon the plaintiff.   It is to be remembered
that he at first refused to deliver the drafts until a bond of
indemnity was furnished, and that afterwards, on a represen-
tation made to the company by counsel for the administrator,
that no bond would be furnished, and that, if not voluntarily
paid, the right of recovery under the policies would be liti-
gated, the agent delivered the draft without further condi-
tion.   Certainly what this agent said and did was within the
scope of his authority, regardless of any provisions in the
policy.   The company is now relying on the delivery of
these drafts as constituting the very payment which they
make the basis of their right to recover back the money paid,
and cannot question the authority of the agent through whom
such payment was made.

The judgment of the trial court is therefore *affirmed*.

4. PRINCIPAL
AND AGENT:
scope of
authority.