BELLE CHAMBERLAIN et al., Appellees, v. ANDERS H. ANDERSON et al., Appellants.

**EXECUTORS AND ADMINISTRATORS:** Estates of Absentees—Excluding Unknown Wife and Child. In probate proceedings against a person who is an *absentee,* within the meaning of Sec. 3307, Code

Supp., 1913, a finding by the court that a named daughter is the sole heir of said absentee is final and conclusive as to the absolute right of such daughter personally to convey good title to the real estate of the absentee father, even though it be subsequently discovered that, during the absence of the father, he remarried, and *at the time of the probate proceedings,* had a wife and an additional child living. Whether the excluded wife and child may have recourse against the daughter who conveyed, *quaere.*

**EXECUTORS AND ADMINISTRATORS:** Estates of Absentees—Presumption as to Heirship. The presumption will be indulged that the court performed its duty and made a finding as to who were the heirs of an absentee (Sec. 3307, Code Supp., 1913), when the record files contain repeated allegations as to who were the heirs, and the entire record is consistent with such presumption.

**DOWER:** Inchoate Interest—Nonvested Interest. Principle reaffirmed that an inchoate right to dower is, during coverture, subject to enlargement, reduction, or extermination.

*Appeal from Audubon District Court.*—E. B. WOODRUFF, Judge.

NOVEMBER 21, 1922.

REHEARING DENIED APRIL 6, 1923.

ACTION in equity, to set aside proceedings for the administration of the estate of an absentee, and certain conveyances of real estate belonging to the absentee, and for the partition of such real estate. There was a decree in the court below in favor of plaintiffs, as prayed. Defendants appeal.—*Reversed.*

*Douglas Rogers, John A. Graham, L. L. Ryan,* and *Charles Bagley,* for appellants.

*Mantz & White,* for appellees.

STEVENS, C. J.—This is an action in equity, for the partition of the SE¼ of the NE¼ of Section 18, Township 79, Range 35, Audubon County, Iowa. Omitting allegations of plaintiffs' petition which, in view of the conclusion reached in this case, are immaterial, the pleading is in the usual form of a petition in equity for the partition of real estate. In

addition to a general denial, the defendants set up some equitable matter, adverse possession, and the statute of limitations.

While the facts disclosed by the record present nothing of an unusual or extraordinary character, the application of the statute thereto involves some rather novel questions; and we deem it advisable, at the outset, to make a full statement of the record. Alfred Chamberlain, a resident of Audubon County, married Ida Baller, in 1890. To this union there was born one child, known in the record as Eva Hoover. Ida Baller Chamberlain died January 18, 1891, seized of the fee to the above described real estate, subject to the life tenancy of her mother. Not long after the death of his wife, Alfred Chamberlain left Audubon, and the first definite information as to his whereabouts thereafter, as shown by the record, is the testimony of various witnesses residing in Los Angeles, that he came there in 1892. He was at times employed by his brother as an engineer in a brick plant, but the occupation generally followed by him was that of a sailor. He is shown to have resided at different times in Los Angeles and San Francisco, but his last known place of residence was Tucson, Arizona. If Alfred Chamberlain ever communicated with anyone at Audubon, it was shortly after he left there, following the death of his wife. The record does not disclose where he was, when heard from. The plaintiff Belle Chamberlain and her coplaintiff, Edith Schneider, alleged in their petition that they are respectively the surviving widow and heir at law of Alfred Chamberlain.

The plaintiff Belle Chamberlain was called as a witness in her own behalf, and permitted to testify, over the objections of counsel for defendants that she was incompetent, under Section 4604 of the Code, that she was married to Alfred Chamberlain on June 11, 1893, on a vessel at Catalina, by the master of the ship, and that Edith Chamberlain Schneider was born May 29, 1897, at San Francisco. A document which she testified was the original certificate of marriage signed by the master of the vessel who performed the marriage ceremony, was offered in evidence. Photographs and other testimony offered in evidence fully identified her husband as the Alfred Chamberlain in question. Whether the testimony of Belle Chamberlain as to the marriage was, upon the record, competent or not, the testimony

of other witnesses, whose competency is not disputed, seems to satisfactorily establish her claim that she was the wife, and is the surviving widow, of Alfred Chamberlain, and that Edith Schneider is his daughter. The undisputed evidence shows that Alfred Chamberlain was in Los Angeles in 1909 and 1910. Belle Chamberlain testified that she last saw her husband in 1902, and that the last letter she received from him was written in 1906, and mailed at Tucson, Arizona. Hearsay evidence was introduced, to the effect that he was in Nebraska in 1914, and in Seattle in 1919. Plaintiff testified that she investigated the rumor that he was in Seattle, and satisfied herself that it was untrue.

Eva Chamberlain intermarried with C. L. Hoover, and continued to reside in Audubon County. The life tenant died in 1910. Thereupon, Eva Hoover instituted proceedings in probate, under Section 3307 of the 1913 Supplement to the Code, for administration upon the estate of Alfred Chamberlain, as an absentee. She was appointed and qualified as administratrix of his estate, and was finally discharged by the court, May 15, 1912. The only property of Alfred Chamberlain in Audubon County was his undivided one-third interest in the 40-acre tract above described. Mrs. Hoover, as the heir of her mother, owned an undivided two thirds of the land. There were no debts against the estate, and Eva Hoover, believing herself to be the only heir of her father, took possession of the real estate, without sale. The proceedings in probate conformed to all the requirements of the statute, and are questioned by plaintiffs only in so far as it was adjudicated that Eva Hoover was the sole and only heir at law of her father.

Eva Hoover and her husband entered into a contract in writing with the defendant Peter H. Anderson, on March 4, 1911, agreeing to sell and convey the 40-acre tract to him for a consideration of $4,000. Pursuant to this contract, a deed conveying the property to him was executed May 16, 1912. On May 28, 1917, Peter H. Anderson conveyed the premises to his codefendant, Anders H. Anderson, who owned the same at the time of the trial below. Possession was taken by Peter H. Anderson March 1, 1912.

The petition in this case was filed February 7, 1920, and a

decree in favor of plaintiffs was entered on March 2, 1921.

Counsel on both sides have treated the several sections of the Code relating to the administration and distribution of estates of absentees as in all respects valid, and we shall, therefore, without examining into or expressing any opinion as to the validity or constitutionality thereof, for the purposes of this case assume that they meet all constitutional requirements. We are not to be understood, by the foregoing statement, as intending to cast doubt upon the constitutionality of the statute. That question is not involved.

Although the material portions of the statute were copied into our opinion in the recent case of *In re Estate of Kite,* 194 Iowa 129, we again set them out herein, as follows:

"Sec. 3307 (1913 Supplement to the Code). When a resident of this state owning property therein, or any person who may have been a resident of this state, has acquired or may hereafter acquire property or property rights within the state, absents himself from his usual place of residence and conceals his whereabouts from his family without known cause for a period of seven years or any such person who has gone to parts unknown for a period of ten years, a petition may be filed in the district court of any county where such property or a part thereof is situated, setting forth such facts, by any person entitled to administer upon such absentee's estate if he was known to be dead, and setting forth the names of the persons who would be the legal heirs of the absentee if he were dead, so far as known, and praying for the issuance of letters of administration upon such estate; thereupon, said court shall prescribe a notice addressed to such absentee and heirs named, and order the same to be published in a newspaper published in said county to be designated by the court, once each week for eight consecutive weeks, and which shall be served personally upon all the heirs residing within the state in the manner, and for the length of time as is required for the service of original notices, proof of the publication and service of which in manner and for the time ordered shall, at the expiration of said period be filed with said petition, and thereupon if such absentee fails to appear, the court shall hear the proof presented, and if satisfied of the truth of the facts set forth in the petition concerning

the absentee, shall order letters of administration upon the estate of such absentee to issue as though he were known to be dead. The court shall also hear proof and determine who the legal heirs of such absentee are and their respective interests in such estate.

"Sec. 3307-a. The person to whom the administration is granted shall proceed to administer and dispose of the estate in the same manner that administrators are required to dispose of and administer the estates of decedents. In addition thereto, such administrator may, under the orders of the court, sell and dispose of all real estate and other property owned by such absentee, and after the payment of legal costs, expenses and claims, make distribution of the proceeds thereof to the persons entitled thereto. The provisions of law regarding application, notice and manner of sale of real estate for the payment of debts by administrators shall be followed so far as applicable.

"Sec. 3307-b. Administration upon the estate of an absentee shall forever bar his or her right of homestead and statutory distributive share or interest in and to any real estate owned or held by the spouse of such absentee, or in which said spouse may have a legal or equitable interest, and a conveyance thereof by such spouse after one year from and after such administration has been granted, shall be free and clear of any claim or right of homestead or statutory distributive share on the part of such absentee."

The law is settled in this state, and in most, if not all, other jurisdictions, that the legislature may enact laws for the administration and distribution of the estates of absentees, by providing for notice and the proper safeguards for the preservation of the property and the rights of the absentee. *New York L. Ins. Co. v. Chittenden & Eastman,* 134 Iowa 613; *Cunnius v. Reading Sch. Dist.,* 198 U. S. 458 (49 L. Ed. 1125); *Blinn v. Nelson,* 222 U. S. 1 (56 L. Ed. 65); *Nelson v. Blinn,* 197 Mass. 279 (83 N. E. 889); *Selden's Exr. v. Kennedy,* 104 Va. 826 (52 S. E. 635); *Adams v. Adams,* 211 Mass. 198 (97 N. E. 982); *Purdon v. Blinn,* 192 Mass. 387 (78 N. E. 462); *Barton v. Kimmerley,* 165 Ind. 609 (76 N. E. 250). There is much contrariety in the statutes of the various states; but, as the statutes

under consideration are not questioned, we need not discuss them.

Proceedings for the administration of the estate of an absentee having property in this state, under Section 3307 *et seq.*, are based neither upon the fact nor the presumption of the death of such absentee. *In re Estate of Kite,* supra; *Haddock v. Meagher,* 180 Iowa 264. Although the absentee may, in fact, be alive, the adjudication in probate, if it is authorized by statute, and the proceedings are regular, is binding and conclusive upon him. *New York L. Ins. Co. v. Chittenden & Eastman,* supra; *Cunnius v. Reading Sch. Dist.,* supra; *Blinn v. Nelson,* supra.

Administration, however, under the general statute for the administration of the estates of decedents, based upon the presumption of death arising from absence for seven years, is not binding upon the absentee, unless he is in fact dead. *New York L. Ins. Co. v. Chittenden & Eastman,* supra; *Appeal of King,* 88 Conn. 423 (91 Atl. 267) ; *Scott v. McNeal,* 154 U. S. 34 (38 L. Ed. 896).

Concerning the general power of the states to enact legislation affecting the property of absentees and providing for the administration of their estates, Mr. Justice White, in *Cunnius v. Reading Sch. Dist.* supra, said:

"We do not pause to demonstrate, by original reasoning, that the right to regulate concerning the estate or property of absentees is an attribute which, in its very essence, must belong to all governments, to the end that they may be able to perform the purposes for which government exists. This is not done, because we propose rather to test the question by ascertaining how far such authority has been deemed a proper governmental attribute in all times and under all conditions. If it be found that an authority of that character has ever been treated as belonging to government and embraced in the right to protect and foster the well-being and order of society, it must follow that that which has at all times been conceded to be within the power of government cannot, in reason, be said to be so beyond the scope of governmental authority that the exertion of such a power must be held to be a want of due process of law, even although there is no constitutional limitation affecting the exercise of the power."

In the course of the opinion in the *Cunnius* case, the justice quoted from Demolombe, as follows:

"Three characters of interest invoke a necessity for legislation concerning this difficult and important subject. First. The interest of the person himself who has disappeared. If it is true that, generally speaking, every person is held at his own peril to watch over his own property, nevertheless the law owes a duty to protect those who from incapacity are unable to direct their affairs. It is upon this principle of public order that the appointment of tutors to minors or curators to the insane rests. It is indeed natural to presume that a person who has disappeared, if he continues to exist, is prevented from returning by some obstacle stronger than his own will, and which, therefore, places him in the category of an incapable person, whose interest it is the duty of the law to protect. And it is for this reason that the provisions as to absence in the Code are placed in the chapter treating of the status of persons, because the absentee, in the legal sense, is a person occupying a peculiar legal status. Second. The duty of the lawmaker to consider the rights of third parties against the absentee, especially those who have rights which would depend upon the death of the absentee. Third. Finally, the general interest of society which may require that property does not remain abandoned without someone representing it, and without an owner."

The task before us is, therefore, one of statutory construction only. The essential provisions and requirements of Section 3307 are that (a), when a resident of this state owning property therein absents himself from his usual place of residence and conceals his whereabouts from his family, without known cause, for a period of seven years, then (b) a petition may be filed in the office of the clerk of the district court of any county where such property is situated, by any person who would be entitled to administer upon his estate, if he were known to be dead, setting forth the facts concerning his absence and the concealment of his whereabouts, together with the names, so far as known, of the persons who would be his legal heirs, if he were deceased, and praying for the issuance of letters of administration. (c) Upon the filing of such petition, the court shall prescribe a notice addressed to the absentee and his heirs named in the peti-

tion, and order such notice to be published once each week, for eight consecutive weeks, in a designated newspaper published in said county. Proof of publication is to be made the same as in case of original notices. (d) If, at the expiration of eight weeks, the absentee fails to appear, the court shall hear proof of the allegations set forth in the petition, and if satisfied that same are true, shall order letters of administration upon the estate of the absentee to issue the same as though he were known to be dead. (e) The court shall also hear proof and determine who the legal heirs of the absentee are, and their respective interests in his estate.

This statute was complied with in all respects, except that the record does not show affirmatively that the court had proof and ascertained who would have been the legal heirs of the absentee, if he had been known to be dead. The record is not clear as to whether or not all of the probate proceedings were introduced in evidence; but it is shown that the administratrix set up, in her petition for the appointment of an administrator, in the published matter, and in the list of heirs filed in the office of the clerk, and in her waiver of notice of final report, that she was the sole and only heir at law of the absentee. There can be no doubt that she was his only *known* heir. She accompanied her final report as administratrix with a receipt acknowledging receipt by her of all the property of the estate. The final report was approved, and the administratrix was discharged, after due and proper legal notice had been given. We must presume, in the absence of a showing to the contrary, that the court did hear proof and did make a finding, whether it was made of record or not, as to the heirs of the absentee, and that it found that Eva Hoover was the only heir, and that the property in question passed to her absolutely.

2. EXECUTORS
AND ADMINIS-
TRATORS: es-
tates of ab-
sentees: pre-
sumption as
to heirship.

Edith Belle Chamberlain became the wife of the absentee after he departed from his usual place of residence, and while he was concealing his whereabouts, without known cause, from his family. The evidence shows affirmatively that the absentee was living in 1910, and created a strong probability that he was alive as late as 1914. The court, in determining who would be the

legal heirs of the absentee, if he were then deceased, and who was entitled, under the law, to share in his estate, was necessarily limited to such knowledge or information as was available in the community, or could be obtained from known relationships. The inquiry must have proceeded from and returned to that point. The existence of Belle Chamberlain as the wife, or of Edith Schneider as one of the heirs at law of the absentee, was unknown to the administratrix and to the court, at the time administration was had upon his estate. Nothing was known of them by anyone, so far as the record shows, in Iowa, until they voluntarily appeared, and commenced this action to partition the land, or perhaps shortly prior thereto.

Section 3366 of the Code, relating to the share of a surviving spouse, so far as material to this controversy, is as follows:

"One third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him."

The inchoate right of dower does not create a vested interest in the property of the husband, and may be changed or abolished altogether during coverture. *Lucas v. Sawyer*, 17 Iowa 517; *Moore v. Kent*, 37 Iowa 20; *Parker v. Small*, 55 Iowa 732; *Cunningham v. Wilde*, 56 Iowa 369.

3. DOWER: inchoate interest: non-vested interest.

Section 3307-a of the Supplement authorizes the court to order the sale of all real estate belonging to the absentee, and after the payment of legal costs, expenses, and claims, to order distribution of the proceeds derived therefrom, to the persons entitled thereto. The provisions for the sale of real estate by the administrator to pay debts are made applicable to sales by the administrator of the estate of an absentee, except that it is not necessary that the sale be for that purpose. Under Section 3307-b of the Supplement, the interest of an absentee in the real estate of the husband or the wife, as well as all other rights of homestead and distributive share, is barred, in case of sale by the spouse of the absentee at any time "after one

year from and after administration upon his estate has been granted.''

The facts of this case do not bring it within the provisions of Section 3307-b. Title to the undivided interest of Alfred Chamberlain in the land in question vested upon the death of his wife, which occurred before he left Audubon County. If there had been a sale of the interest of the absentee by the administratrix upon the order of court, there can be no doubt but that the purchaser would have acquired all of the interest of the absentee therein; and if appellees were entitled to share in his estate, they would have been compelled to look to the administratrix alone therefor.

If the essence of statutes providing for the administration of the estates of absentees, and the fundamental conceptions upon which rests the power of the government to deal with the subject, are the preservation of the property of the absentee for the benefit of those who have rights therein in the event of his death, and for the general interest of society, and the purpose that property should not be abandoned and left without an owner or someone to represent it, then, surely, lawmaking bodies, in the enactment thereof, must intend that a purchaser of property that has been the subject of administration in pursuance thereof will not be subject to the claims of heirs at law or of other persons who were wholly unknown at the time of the administration, and whose existence or whereabouts could not then have been ascertained. Not only may the right of the wife to share in the property of her husband of which he shall die seized be extinguished by the legislature during coverture, but the interest of an heir therein may be forever barred and cut off by the statute of limitations. It is clear that, if the interest of the absentee in the property in question had been sold to Anderson by the administratrix under the provisions of Section 3307-a, Anderson would have acquired a good title; or if the absentee had left his family before the death of his wife, and she had conveyed the property to Anderson at any time ''after one year from and after administration had been granted,'' he would have acquired a good title. Is a sale of the property of an absentee by the administratrix under the order of the court necessary to pass title to the purchaser thereof? The legisla-

ture must have intended to remove all impediments to the dis-
position or sale of the property of absentees, to the end that it
might be preserved, and the interest acquired by purchasers
thereof protected. It was for this purpose that the duty is laid
upon the court to hear proof and to determine who the legal
heirs of the absentee are, together with their respective interests
in his estate. The finding and determination of the court in
this respect was doubtless intended to be final and binding upon
the world. It is, in effect, in the nature of a decree of a court of
equity in an action to quiet title. The statute does not recog-
nize unknown claimants to the estates of absentees, and the pro-
vision for notice relates only to known heirs. If, after sale of
real estate by the administrator, and distribution of the pro-
ceeds to the known heirs, others, whose existence and claims
could not, in the very nature of the circumstances, at the time of
administration have been discovered, may later maintain an
action in equity for the partition of such real estate, then the
statute operates as a trap for purchasers of property of ab-
sentees, and leaves the title thereto as insecure as before. This
could not have been intended. It seems to us that the statute
does not contemplate that a distinction shall be made between
the interest acquired by a purchaser in good faith from the
administrator of the estate of an absentee under the order of the
court, and the interest acquired by an heir who has taken posses-
sion of the real estate, rather than of the proceeds of a sale
thereof by the administrator. It is true that it is the duty of the
administrator, under Section 3307-a, to administer and dispose
of the estate in the same manner as do the administrators of
the estates of decedents. This provision, however, throws no
particular light upon the legislative intent. It as clearly refers
to the manner of distribution and the final settlement of the
estate, and not to those to whom distribution should be made.
Such is the specific language of the statute.

Full effect can be given to the evident intention of the
legislature only by such a construction of the statute as will,
under the determination by the court of heirship, bar the right
of those who assumed such relationship or came into existence
as the result thereof after the period of absence began, and dur-
ing the time the absentee concealed his whereabouts from his

family without known cause, to assert any interest in the property of such absentee that has been the subject of administration by a court of proper jurisdiction. This is the construction which we think should be placed upon it. It. is immaterial, if the statute be so construed, whether such claimants may thereafter maintain an action against the administrator, to recover the value of such interest as they might otherwise have had in the property. This question is not before us.

All parties in the court below and in this court have treated the proceedings in probate as conclusive and binding upon the absentee, the plaintiffs, however, placing considerable emphasis upon the finding of the court that he was judicially dead. If the validity of the proceedings in probate depended upon the presumption of the death of the absentee, they could not be sustained, for the reason that the record quite satisfactorily discloses that he was alive as late as 1910, and possibly as late as 1914. The finding of the court in the probate proceedings that the absentee was dead does not in any way affect the rights of the parties hereto, unless it be that the plaintiff Belle Chamberlain could in no event assert an interest in the property during the lifetime of her husband. This question we do not decide.

It is also true that we have not, in disposing of the questions before us, adopted the reasoning or argument of counsel. The case is triable *de novo,* and we are not required to do so. It is our conclusion, and we hold, that neither of appellees herein has any interest in the real estate in question, and their petition for the partition thereof should have been dismissed. It follows that the judgment and decree of the court below must be, and is,—*Reversed.*

WEAVER, EVANS, PRESTON, ARTHUR, and DE GRAFF, JJ., concur.

FAVILLE, J., dissents.