Argued June 3, affirmed October 22, 1969

FIRST STATE BANK OF OREGON, *Appellant, v.* PEOPLES NATIONAL BANK OF WASHINGTON ET AL, *Respondents.*

459 P2d 984

*Thomas M. Triplett,* Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson and John L. Schwabe, Portland.

*R. R. Bullivant,* Portland, argued the cause for respondents. With him on the brief were Davies, Biggs, Strayer, Stoel and Boley and Cleveland C. Cory, Portland, MacBridge and Sax and Kenneth G. Burrows, Seattle, Washington, and Bullivant, Spackman & Wright and C. E. Zollinger, Portland.

Before SLOAN, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The plaintiff, First State Bank, brought this action to recover $100,000 from the two defendant banks upon the ground that payment of such amount by the plaintiff to the defendants was made under a mistake of fact. The defendants' demurrer to plaintiff's complaint was sustained and plaintiff appeals. The facts are as alleged in the complaint.

Otis Jordan and others executed guaranty agreements whereby they guaranteed loans to be made by the plaintiff to Pacific Concrete Co. Plaintiff loaned $250,000 to Pacific Concrete. Pursuant to participation agreements the defendants participated in such loan in the amount of $100,000 each. Pacific Concrete defaulted in payment and the guarantors were asked to pay. Jordan borrowed $100,000 from plaintiff, executing a personal note to plaintiff which was secured by stock. Jordan deposited the $100,000 and delivered his check for $100,000 to the plaintiff. Plaintiff forwarded $50,000 to each of the defendants pursuant to the participation agreements. About seven months later the plaintiff discovered that the stock it held as collateral for the $100,000 loan to Jordan was forged and worthless. Plaintiff demanded the return of the $100,000 from the defendants but they refused.

The theory of plaintiff's case is that payment was made by the plaintiff under a mistake of fact and, therefore, it is entitled to restitution for the reason that permitting the defendants to retain such payments would result in their unjust enrichment.

Because of the mechanics by which this transaction was handled we could reasonably conclude that the forwarding of $100,000 by plaintiff to defendants was not induced by mistake. We could consider that the mistake occurred when plaintiff loaned $100,000 to Jordan under the mistaken belief, created by Jordan's fraud, that the collateral was genuine. This conclusion could be supported because the transaction took the form of plaintiff loaning to Jordan and Jordan depositing the proceeds of the loan and paying plaintiff with his personal check. However, we believe it more satisfactory to consider the essence of the transaction which was payment of the loan proceeds to the creditors of the borrower under the mistaken belief that the collateral securing the loan was genuine.

Under some circumstances a person paying money to another because of a unilateral mistake is entitled to restitution; e.g., *Wagener v. United States National Bank*, 63 Or 299, 127 P 778 (1912). However, this is not always the case.

An instance in which the mistaken payor cannot secure restitution is set out in Restatement, Restitution § 14(1), p 55:

"A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if

the transferee made no misrepresentation and did not have notice of the transferor's mistake."

If this section is applicable in the present case the creditor would be the defendants, the debtor Jordan, and the payor the plaintiff. The benefit in discharge of the debt would be the payment by plaintiff to defendants.

The annotator at 114 ALR 382, 384 (1938), states what appears to be the same principle, as follows:

"But according to numerous cases this rule as to recovery of payments, made under a mistake of fact does not apply where, as a result of a mistake or fraud between the original parties, money is paid by one of them on account of the other to a third party (directly or through the intervention of the other), who receives the same in good faith without knowledge of the mistake or fraud, in payment of a claim by him against the latter. In such case, by the overwhelming weight of authority, no recovery may be had against such third party."

The defendants urge that the principle above stated is applicable and has been adopted by this court in *First Nat'l Bank v. Noble*, 179 Or 26, 168 P2d 354, 169 ALR 1426 (1946); noted 27 Or L Rev 75 (1947). In that case one Kelleck drew a check upon the plaintiff bank. Noble was the payee and he deposited the check. Kelleck had insufficient funds in the bank to cover the check; however, by mistake the drawee bank honored the check. The bank sought restitution from the payee, Noble, but this court held against the bank. Our decision was grounded upon § 33 of Restatement, Restitution. Section 33 is a special rule which, in effect, applies § 14, above quoted, to payments of certain negotiable instruments. Section 33 provides:

"The holder of a check or other bill of exchange

who, having paid value in good faith therefor, receives payment from the drawee without reason to know that the drawee is mistaken, is under no duty of restitution to him although the drawee pays because of a mistaken belief that he has sufficient funds of the drawer or that he is otherwise under a duty to pay."

The majority in *First Nat'l Bank v. Noble,* supra (179 Or 26), regarded the issue as being one that should be governed by negotiable instrument law. The problem was considered analogous to that beacon of bills and notes, *Price v. Neal,* 3 Burr 1354 (1762), in which Lord Mansfield decided that the drawee bank was liable to a holder in due course upon a check on which the drawer's signature was forged. This court reasoned that if a bank must bear the loss when it honors a check under the mistaken belief that the drawer's signature is genuine, a mistake which usually is not caused by negligence, the bank certainly must bear the loss when the mistake is as to the amount in the drawee's account, a mistake usually caused by the bank's negligence.

Negotiable instruments were used in the transaction in the instant case; however, in the crucial event, the payment by the plaintiff to the defendants, nothing peculiar to negotiable instruments is involved and there is no reason to apply law peculiar to negotiable instruments.

*Daniels v. Parker,* 209 Or 419, 306 P2d 735 (1957), however, applied the rationale of *First National Bank v. Noble,* supra (179 Or 26), to facts not involving negotiable instruments. The plaintiff in that case purchased a motor vehicle from a dealer on a conditional sales contract and the dealer-seller transferred the contract to the defendant finance company. The plain-

tiff paid off the contract and received the title from the finance company. The plaintiff resold the car and subsequently the car was repossessed from the second purchaser because it had been stolen before it had come into the possession of the dealer who sold it to the plaintiff. For this reason neither the dealer nor the plaintiff received any title. Under the implied warranty of title the plaintiff had to repay the party to whom he sold the car and plaintiff sought reimbursement from the finance company. In the *Daniels* case the plaintiff Daniels was in the same position as the plaintiff in the present case. The dealer who sold the car to the plaintiff Daniels is in the same position as Jordan except that the transfer of the car was the result of a mistake and not by reason of fraud. The defendant finance company was in the position of the defendant banks in this case; it received payment in ignorance of the mistake which motivated plaintiff's payment. We held in favor of the finance company and stated:

"We believe that this case falls within the rule stated in Restatement of Restitution, 55 § 14 (2) as follows:

" 'An assignee of a non-negotiable chose in action who, having paid value therefore, has received payment from the obligor is under no duty to make restitution although the obligor had a defense thereto, if the transferee made no misrepresentation and did not have notice of the defense.'

"Comment (a) on Section 14 states that the above rule 'is a specific application of the underlying principle of bona fide purchase' and refers to comment (a) on Section 13 of the Restatement which reads as follows:

" 'The principle that a person who innocently has acquired the title [here, money] to something for which he has paid value is under no duty to

restore it to one who would be entitled to reclaim it if the one receiving it had not been innocent or had not obtained the title or had not paid value therefor, is of wide application, being a limitation upon the principle that a person who has been wrongly deprived of his things is entitled to restitution. This limitation involves no moral issue, since it merely creates convenient rules for determining which of two innocent persons should bear a loss which must be borne by someone. It is most frequently applied to the situation where a person purchases land, chattels or negotiable instruments from one who has title thereto, and who makes the transfer in violation of the rights of third persons or who had acquired the title under such conditions that the original transferor was entitled to restitution. However, it applies also where the subject matter is received directly from the transferor at the direction of the other party to the transaction. The same underlying principle also operates under the circumstances stated in § 14.' " 209 Or at 421-422.

Unless there is a peculiar relationship between the parties in the present case which requires a different result, we consider that the law established by the above two Oregon cases requires the conclusion that the plaintiff here cannot recover. The plaintiff was aware that we might so reason and urges that the relationship between the parties does compel a different result. Plaintiff contends that the relationship between the plaintiff and the defendants was either that of joint venturer or agent and principal; that either relationship creates a fiduciary obligation by the defendants to plaintiff; and that because of this relationship defendants should, in equity and good conscience, give restitution to plaintiff.

We do not find any relationship which would result in the law of *First Nat'l Bank v. Noble,* supra

(179 Or 26), and *Daniels v. Parker,* supra (209 Or 419), being inapplicable. The complaint alleges that the loan from plaintiff to Jordan was a personal loan. The participation agreements evidencing the terms of the contracts between the parties for participation in loans are part of the complaint. These agreements do not express or imply any obligation on plaintiff's part to make a personal loan to a guarantor in order that the defendants can be partially repaid. The agreements and the allegations of the complaint lead to the conclusion that this loan was completely independent of any agreement or relationship between the parties.

Plaintiff cites *Security Savings & Trust Co. v. King,* 69 Or 228, 138 P 465 (1914), as holding that where there is a close relationship between the mistaken party making payment and the party receiving payment, restitution must be made. In *First National Bank v. Noble,* supra (179 Or at 62-65), we construed the *Security Savings & Trust Co.* case as being decided upon the terms of the contract of deposit governing the relationship between the plaintiff and defendant. In the present case the contracts between the parties did not contemplate a personal loan by plaintiff to a guarantor; that loan was made independently of any relation between plaintiff and defendants.

Plaintiff calls to our attention statements in our decisions that restitution for mistake will be decreed "provided the payment [by reason of mistake] has not caused such a change in the position of the payee that it would be unjust to require the refund." *Smith v. Rubel,* 140 Or 422, 426-427, 13 P2d 1078, 87 ALR 644 (1932). Defendants do not contend they changed their position. In *First National Bank v. Noble,* supra (179 Or at 59), we observed that the rule from Re-

statement, Restitution, which was relied upon contained no requirement of a change of position. Section 14, Restatement, Restitution, which is the section applicable to the facts in the present case, also contains no requirement of a change of position. The reason for not requiring a change of position is that the party receiving payment is a third party to the events that caused the mistake and is akin to a bona fide purchaser. Section 14, Restatement, Restitution, *Comment a.*; *Daniels v. Parker,* supra (209 Or at 421).

We have examined the other two assignments of error made by plaintiff and conclude they have no merit and need no discussion.

Affirmed.