(601 P.2d 1169)
No. 50,120

United States Fidelity and Guaranty Company, *Appellant,* v. Henry L. Marshall, d/b/a Marshall's Portable Service and Body Shop, *Appellee.*

Opinion filed November 2, 1979.

Ross A. Hollander, of Render & Kamas, of Wichita, for appellant.
E. Lael Alkire, of Alkire, Dwire & Wood, of Wichita, for appellee.

Before Foth, C.J., Parks and Meyer, JJ.

Meyer, J.: In December, 1976, an automobile was stolen from a dealer's lot. The dealer's insurance company, United States Fidelity and Guaranty Company (appellant), paid the dealer for his car, received title to it, and then brought an action in replevin for the car against Henry L. Marshall, d/b/a Marshall's Portable Service and Body Shop (appellee), who had repaired and painted the vehicle.

It develops that on March 2, 1977, a person calling himself "Aqureleza" brought the car to appellee requesting repairs and a paint job. Appellee never saw "Aqureleza" again.

The trial court granted possession of the automobile to appellant but granted appellee judgment in the amount of $1617.19 on the theory of unjust enrichment.

The issue in this case is whether the trial court erred in granting appellant's claim for repairs made to the automobile on the theory of unjust enrichment.

It is to be initially noted that appellee cannot avail himself of any statutory remedy. The artisan's lien statute, K.S.A. 58-201, provides in part:

"Whenever any person *at, or with the owner's request or consent* shall perform work, make repairs or improvements on any goods, personal property, chattels, horses, mules, wagons, buggies, automobiles, trucks, trailers, locomotives, railroad rolling stock, barges, aircraft, equipment of all kinds, including but not limited to construction equipment, vehicles of all kinds, and farm implements of whatsoever kind, a first and prior lien on said personal property is hereby created

in favor of such person performing such work or making such repairs or improvements and said lien shall amount to the full amount and reasonable value of the services performed, and shall include the reasonable value of all material used in the performance of such services." (Emphasis added.)

There is no evidence in the present case that appellant either requested or consented to the repairs by appellee as required by the statute. Thus, appellee's remedy, if any, must be on common law principles.

Likewise, it is to be noted that no true contractual remedy exists for appellee against appellant. The facts indicate a contractual relationship between "Aqureleza" and appellee but the evidence indicates no such relationship between appellant and appellee. Appellee, therefore, relies on the theory of a quasi-contract. Kansas cases have recognized such a theory. In *Witmer v. Estate of Brosius,* 184 Kan. 273, Syl. ¶ 3, 336 P.2d 455 (1959), it is stated:

"Unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performance in question, nor are they promises. They are obligations created by law for reasons of justice founded upon principles of unjust enrichment."

*Cf. Sharp v. Sharp,* 154 Kan. 175, 178, 117 P.2d 561 (1941); *Minnesota Avenue, Inc. v. Automatic Packagers, Inc.,* 211 Kan. 461, 465, 507 P.2d 268 (1973); *Holiday Development Co. v. Tobin Construction Co.,* 219 Kan. 701, 708, 549 P.2d 1376 (1976). However, the issue in the present case has not been dealt with by the Kansas courts and has scarcely been confronted by other jurisdictions.

Finally, it should be noted that a variety of similar terms are engaged by those dealing with the present subject, including the following: quasi-contracts, restitution, constructive contracts, and unjust enrichment. In this regard, the following statement found in 17 C.J.S., Contracts § 6, p. 571, is relevant:

"[T]he terms 'restitution' and 'unjust enrichment' are modern designations for the older doctrine of quasi contracts, and the substance of an action for 'unjust enrichment' lies in a promise, implied by law, that one will restore to the person entitled thereto that which in equity and good conscience belongs to him."

Though technical distinctions may be found between such terms, no further attempt will be made herein to differentiate between these similar theories.

Appellant relies on the rule stated in the Restatement of Restitution, § 42(2) (1936):

"A person who, in the mistaken belief that he or a third person on whose account he acts is the owner, adds value to the chattels of another, is not thereby entitled to restitution from the owner for the value of his services or the increased value given to the chattels; but if the owner brings an action for their conversion the added value or the value of the services, whichever is least, is deducted from the damages."

Thus appellant argues that since this is an action seeking replevin, *not* damages for conversion, appellee cannot recover.

A recent treatise on the subject of restitution states the general rule as follows:

"Ordinarily, one who by mistake improves another's goods does so at his peril, and cannot hope for restitution." Douthwaite, *Attorney's Guide to Restitution,* § 2.6, p. 76 (1977).

Professor Douthwaite recognizes an exception to the rule, that is, where improvements are made "as a result of a manifestation of the owner's desire for them, if not an actual misrepresentation by the owner." However, the present facts do not appear to conform to the exception.

Douthwaite gives the following example and comments:

"Client, mistakenly believing that a chattel belongs to him, works on Owner's chattel to make it a far more valuable chattel.

. . . .

". . . Client should take whatever steps are conceivably practicable to obstruct any attempt on the part of Owner to regain possession, either by self-help or by legal process such as *replevin,* or so-called claim and delivery. *If this comes to pass, Owner will owe him no duty to compensate for the improvements.*

"Despite this, and odd though it may sound, if Owner sues in equity for specific restitution of the chattel, the court may well require him to 'do equity' by conditioning its decree on compensation. And if Owner sues in tort for conversion, the court will allow Client a setoff for the value of his services, or for the added value to the chattel, whichever is the lesser sum.

"If Client has already sold the chattel as improved, it is likely that Owner will recover only the market value as it was before the improvements were made. But if he sells after learning of another's ownership, he is no longer an innocent converter and would be liable for the proceeds." (Emphasis added.) pp. 77-78.

The above comments suggest that the duty to compensate depends on the remedy employed by the owner of the chattel; if replevin or other action to obtain possession is used, there is no duty to compensate; if suing for specific restitution or conversion, such duty arises.

The comments to § 42(2) of the Restatement of Restitution likewise discuss the remedies of replevin and conversion:

"*d.* The position of the one improving chattels is made less difficult because of the fact that ordinarily he has taken possession of them and the owner of the chattel is not in a position to get them back in specie. The owner's redress is usually either by an action for conversion or an action of replevin. In the action for conversion the damages as against an innocent improver are reduced by the value of the improver's labor and materials; in the action of replevin the possessor can ordinarily defeat specific recovery by giving a bond, the damages being the same as in an action for conversion (see § 154)."

Here, the appellant brought an action in replevin and appellee did not defeat specific recovery by giving a bond. He, therefore, is foreclosed from recovery of the value of his labor or materials from the owner.

The closest cases on point appear to be *Cahill v. Hall,* 161 Mass. 512, 37 N.E. 573 (1894), and *Clarke v. Johnson,* 43 Nev. 359, 187 Pac. 510 (1920).

The rationale for defeating a claim for repairs mistakenly made to another's truck was explained in *Clarke,* 43 Nev. at 365-66:

"The repairs, at the time plaintiff took possession of the trucks, had gone into and become a constituent part of the property. In this situation the owner had no alternative, no choice but to accept the services. This being the fact, there was no implied promise on the part of the owner to pay for the services, nor did the law create one."

The only relatively recent cases found come from New York and deal with repair claims made by innocent purchasers of stolen automobiles against the true owners. For example, in *Eddie's Auto Body Wks., Inc. v. Lumbermen's Mut. Cas. Co.,* 28 App. Div. 995, 283 N.Y.S.2d 306 (1967), the following is stated:

"It is our opinion that plaintiff, deriving its title from a thief, may not assert against the true owner or one standing in privity with the owner any claim for the automobile or the cost of repairs or improvements thereto made without the consent of the owner or its successor in title [cites omitted]."

See also *Winney v. Leuci,* 189 Misc. 441, 74 N.Y.S.2d 585 (1947).

Reversed.