(619 P 2d 520)

No. 50,992

In the Matter of the Application of DWAINE F. RADKE and BARBRA RADKE, his Wife, for the Appointment of Receivership.

Opinion filed October 10, 1980.

*Keen K. Brantley,* of Wallace, Brantley & Shirley, of Scott City, for appellant Keith Cook.

*Marvin E. Thompson,* of Thompson and Arthur, of Russell, for appellee and cross-appellant Icer Addis.

*Thomas L. Fiegel,* of Harkness & Fiegel, of Ness City, and Smith Law Office, PA, of Garden City, for appellees Oral Anspaugh and Rickel, Inc.

Before FOTH, C.J., ABBOTT and REES, JJ.

ABBOTT, J.: This action involves the appeals of Keith Cook and Icer Addis, two creditors of Dwaine F. Radke and Barbra Radke, from a judgment denying their claimed priorities in the distribution of assets in the Radkes' voluntary receivership action. We will refer to Dwaine F. Radke and Barbra Radke as the Radkes, and to Dwaine F. Radke's mother either as his mother or as Mary Hazel Radke.

The claims of Cook and Addis are separate and unrelated, but both of them claim priority to monies produced by the sale of

land identified as the Beltz land. Cook also claims priority to the proceeds of the sale of land identified as the Doebbling land. The sale of the Beltz and the Doebbling lands netted $44,490.31. Some 22 creditors have filed claims totaling $174,903.89 against the receivership. Two of the creditors, Rickel, Inc., and Oral Anspaugh, are also appellees herein, having been granted priority by the trial court over all other creditors as to the net proceeds produced by the sale of the Doebbling land. They claim no interest in the proceeds from the sale of the Beltz land. Rickel, Inc., was given priority on the basis of a judgment lien dated May 5, 1976, in the original amount of $19,431.29, since reduced by a payment of $5,991.81, leaving a lien balance of $13,439.48. Oral Anspaugh's lien in the record amount of $2,840 was also effective May 5, 1976. The trial judge held that Rickel, Inc., and Oral Anspaugh hold first and prior liens against the Doebbling land sale proceeds in the amounts set forth above, plus interest. Cook and Addis were held to be general creditors with all other creditors. All other creditors are general creditors and none is a party to this appeal.

The sale of the Doebbling land produced net proceeds of $27,626.70. The judgment liens of Rickel, Inc., and Anspaugh amounted to $20,557.23. The sale of the Beltz land produced $13,495.74. Those sums were further reduced by court costs and fees totaling $5,091.50 that was ordered paid 67 percent from the Doebbling proceeds and 33 percent from Beltz funds. After the judgment liens of Rickel, Inc., and Anspaugh are satisfied, the remaining $18,841.58 is to be distributed to the remaining general creditors proportionately, to the total of their claims in the amount of $148,354.85.

Addis claims priority on the Beltz proceeds, which presently amount to a net of $11,798.57 after fees and expenses to date are deducted. Cook claims priority over Addis and all other creditors, including Rickel, Inc., and Anspaugh, to the net proceeds of both land sales.

The basis of Addis's claim is that on January 13, 1976, the Radkes entered into a contract to sell the Beltz and Doebbling lands to Addis. On that same day, Addis paid $37,000 on the purchase price, as follows:

(a) $17,000 to the First State Bank of Ness City, Kansas, the amount of an overdue payment that Addis was to assume on an

existing contract of purchase between Dwaine Radke's mother and a third party.

(b) $20,000 to the Radkes' attorney as the down payment, which was disbursed to the Radkes and their attorney.

The Radkes had represented that they were in possession of the Beltz tract by virtue of an assignment of a contract of sale from Dwaine's mother, Mary Hazel Radke. Addis subsequently learned the Radkes were in possession of the Beltz land as a tenant of Dwaine's mother; he then disaffirmed the Radke-Addis contract for misrepresentation on April 29, 1976. The Beltz land was assigned to the receiver on January 8, 1977, by Mary Hazel Radke and sold by the receiver for the sums noted above. The record does not indicate that the Radkes ever had any interest in the Beltz land and Mary Hazel Radke assigned the land to the receiver without any apparent legal compulsion to do so. As a practical matter, she was paid for her equity, and the only funds derived from the Beltz land sale came from Addis's $17,000 payment. Addis is a creditor for $37,000 and claims first priority on the sum of $11,798.57 remaining from the sale of the Beltz land.

Addis claims priority on the Beltz land sale proceeds as a defrauded purchaser whose payment, made in good faith before discovery of the misrepresentation, enhanced the net recovery by virtue of the $17,000 payment on the contract of purchase, and he is entitled to recover that sum from the proceeds of the sale. Addis acknowledges that only $11,798.57 remains in the Beltz "pot" and that the remainder of his $37,000 payment would fall into the general creditor category.

Cook claims priority over all creditors on a much different theory. During the calendar year 1975, Dwaine Radke fed and pastured cattle and hogs belonging to Cook. Cook provided supplemental feed and medicine. Radke, as compensation for the use of his pasture and his labor, was to receive a percentage when the livestock were sold. Without notice to Cook, and without his consent, Radke converted and sold cattle and hogs belonging to Cook. After allowance to Radke for his interest in the livestock, it was agreed that Radke owed Cook $54,698. Although the Radke-Addis contract had not yet been executed, the parties were in the process of entering into the contract that is the subject of Addis's claim of priority.

On December 19, 1975, the Radkes made a partial assignment of the Radke-Addis contract to Cook. The Radke-Addis contract and the assignment were drafted at the same time, but the Radke-Addis contract was not executed until January 13, 1976. The assignment states in pertinent part:

"We, DWAINE RADKE and BARBRA RADKE, of Ness City, Ness County, Kansas, Assignors herein, for value received, hereby sell, assign, transfer, and set over unto KEITH COOK . . . the sum of 54,648.00 [inked in] Dollars, ($    ), which said sum is a portion of the amount to become due us on completion of our performance of a certain contract for the sale of all our interest in and to [description], between ICER ADDIS, of Wichita, Sedgwick County, Kansas, and ourselves.

"We herein grant same to Assignee, with full power and authority to collect the above sum to become due on the contract in our names, and we appoint Assignee Attorney in Fact to place said sum to his own use and to give a receipt therefor in full discharge of said obligation in our names.

"This assignment is made as security to secure and indemnify Assignee for loans and advances that he has made to Assignors prior to the terms of this agreement."

Cook filed the assignment of record the day it was executed and paid a mortgage registration fee.

On April 29, 1976, Addis disaffirmed the Radke-Addis contract of sale, and that disaffirmance has never been contested. In May 1976, the Radkes contracted to sell the Doebbling land to Kent Davidson. The creditors subsequently agreed to the completion of the sale provided the net proceeds would be distributed among the Radkes' creditors as determined by the court.

Cook claims the assignment from the Radkes created an equitable mortgage lien, giving him priority as of the date the assignment was executed and recorded on December 19, 1975.

We will consider Cook's claim first since he claims priority over all other creditors, and if his various contentions are correct he will receive all of the monies available to pay creditors, rendering moot all of the remaining issues.

Cook's principal contention is that the Radkes' intention to create a lien in Cook is apparent from the face of the assignment instrument, and he obviously believed it created a lien in that he recorded the instrument and paid the mortgage registration fee. He then argues that by virtue of the assignment, the vendors' lien held by the Radkes by reason of their contract with Addis passed to Cook; that once the lien vested in Cook, it was not divested by Addis's disaffirmance of the contract nor by the Radkes' failure to

perform. Addis counters that the assignment does not evidence an intent by the parties to create a security interest in the land; that the only security interest granted was in the proceeds of a contract of sale to become due on completion of performance by the Radkes. Addis further contends that if we find the trial court erred and an equitable mortgage does exist, it would not attach to the Beltz land since the Radkes never had an interest in the Beltz land as it was transferred directly from Dwaine Radke's mother to the receiver; further, the record is void of any evidence that the Radkes themselves had any legal or equitable ownership interest in the Beltz land.

The two judgment creditors take no position as to the proceeds of the Beltz land sale, and make no claim that they are entitled to any part of the proceeds of the sale of the Beltz land. As to Cook, they contend the parties did not intend for the partial assignment to create a security interest and, in any event, Cook took subject to all defenses of Addis.

The trial judge made no findings concerning the interests created among the parties by the assignment, nor was he requested to do so. No evidence was offered and the case was decided solely on the basis of oral admissions at oral argument and written instruments. Thus, as we find the partial assignment from the Radkes to Cook to be unambiguous, we are in as good a position to examine the agreement as was the trial judge. *Hill v. Hill,* 185 Kan. 389, 395, 345 P.2d 1015 (1959).

Cook cites a number of Kansas Supreme Court cases setting forth the well-established rule that the form of an agreement is unimportant because equity will consider the substance behind a transaction; and if the parties intended to secure a debt by charging real property as a security for an obligation, the courts will find an equitable mortgage. *Fuqua v. Hanson,* 222 Kan. 653, 655-56, 567 P.2d 862 (1977); *Hill v. Hill,* 185 Kan. at 396. Did the parties intend to give a security interest in the property? We believe they did not.

The fatal weakness of Cook's argument is that the Radkes did not have an equitable interest after they executed the Radke-Addis contract. They held legal title subject to the contract of sale on the Doebbling land and had no interest, either equitable or legal, in the Beltz land. The Radkes did not assign their entire interest in the Radke-Addis contract. They specifically limited the

assignment to the right to receive part of the consideration when the contract was completed. The Radkes, as holders of the legal title, assigned to Cook a *portion* of the consideration to be received from Addis, and Cook accepted that assignment as security for the Radkes' unsecured indebtedness to him. The agreement did not contemplate a mortgage of the Radkes' legal title, and in our opinion it cannot be construed as legally or equitably passing to Cook any interest in the Radkes' title. The agreement merely gave Cook the legal right to receive $54,648 from Addis when the contract between the Radkes and Addis was completed and to give a receipt to Addis for that sum in behalf of the Radkes; and upon that receipt having been given, the Radkes' obligation to Cook would be discharged.

Cook had a contractual right to enforce the agreement between the Radkes and Addis to the extent of $54,648, but it does not follow that by reason of that contract right Cook acquired an equitable interest in the land that survived the termination of the contract by disaffirmance. The disaffirmance by Addis was made after the receivership was commenced with the full knowledge of all creditors and without objection of any of them. Thus, we are not concerned with a situation wherein a vendor has attempted to defeat an assignee's right to enforce a contract. The determinative factor in this case, as we see it, is that the vendor-Radkes admittedly have no right to enforce the contract, and the parties never intended to secure the indebtedness by giving a secured interest on the Beltz land. Radkes' rights under the contract were extinguished when Addis disaffirmed the contract of sale without objection. Any right the Radkes had to enforce the contract was extinguished and no further monies would be received on the contract. Cook, who took only an assignment of money from the proceeds of the sale, was left in the same position he was in prior to the assignment—unsecured. The fact that Cook may have had a right to enforce the contract of sale to the extent of the assignment was extinguished when the contract was terminated with the apparent consent of all parties.

We have examined the cases relied on by Cook and are of the opinion they are distinguishable in that the majority of them presuppose a contract had not been fulfilled and was enforceable against the purchaser. Representative of those cases is *Stevens v. Chadwick,* 10 Kan. 406 (1872), where the contract for deed had

not been completed because all of the consideration had not been paid, a fact known to all parties, and no intervening rights were involved. The other cases and general statements of law are recognized statements of equity not applicable to the facts of this case.

Having determined that Cook is a general creditor, and recognizing that the two judgment lien holders will be paid from the Doebbling land sale proceeds, we turn to Addis's claim of unjust enrichment as to the proceeds from the sale of the Beltz land.

Addis claims he has a right to the remaining proceeds from the sale of the Beltz land in the amount of $11,798.57, less any additional fees and expenses the district court might allow on remand. It is his position that the receiver received at least $17,000 more for the Beltz land than would have been obtained without the $17,000 Addis paid, and the trial court's finding to this effect is unchallenged. As a result, Addis contends Mary Hazel Radke, and ultimately the creditors of the Radkes, would be unjustly enriched in the amount of $11,798.57 if he is not allowed priority on that sum. We agree. As noted in *United States Fidelity & Guaranty Co. v. Marshall,* 4 Kan. App. 2d 9, 10, 601 P.2d 1169 (1979), restitution and unjust enrichment are similar terms and their substance "lies in a promise, implied by law, that one will restore to the person entitled thereto that which in equity and good conscience belongs to him." None of the parties disputes the fact that Addis is the source of the $11,798.57, nor do they dispute the fact that he paid that sum pursuant to a contract of purchase under the mistaken belief that the contract was valid and that he had assumed the responsibility of making the overdue $17,000 payment. The fact that the Radkes were not the title holders of record and that an earlier investigation of the actual facts would have led to discovery of the fact the Radkes had no assignment to the underlying contract of purchase does not defeat Addis's claim. Restatement of the Law of Restitution § 59 (1936), states: "A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care," for the reason that unless the lack of care resulted in harm to an interested party, it should not be penalized. In this case, Mary Hazel Radke was not harmed; in fact she benefited from the contract being brought current. The record title holder benefited

by receiving payment on the contract. The general creditors are not harmed. In fact, they may have benefited by the difference between Addis's payment and the amount left after the payment of fees and expenses, a substantial part of which would have otherwise been charged against the Doebbling land sale proceeds, thus reducing the amount available to the general creditors. See also Restatement of the Law of Restitution § 17*c* (1936). At the time Addis had to make his decision, he was acting in good faith under a mistake of fact and cannot be considered to have made a voluntary payment so as to be classified as an intermeddler into the affairs of others. He did not knowingly confer an unsolicited benefit on another, an action which usually bars restitution.

Equity has long allowed a person who pays money to another under the mistaken belief a valid contract exists to recover that money when the contract is subsequently canceled for fraud or mistake and the rights of innocent parties have not intervened. Restatement of the Law of Restitution §§ 17, 28 (1936); IV Palmer, Law of Restitution § 22.1 (1978); III Palmer, Law of Restitution §§ 14.17, 14.18 (*b*) (1978). Equity permits the tracing of assets and the impression of a trust or equitable lien on them without the showing that a money judgment against the party who precipitated the fraud would be uncollectable. I Palmer, Law of Restitution § 3.14 (*a*) (1978). In any event, the record in this case convincingly shows the Radkes to be insolvent.

Kansas allows funds to be traced in equity cases and the owner to reclaim them when they can be identified. "It matters not how much it may have changed, either in form or character, it still belongs to the owner, and if it, or its fruits or substitute, can be found among the assets of the trustee, the amount of the fund may be taken out of such assets, providing no superior rights of innocent third parties have intervened." *Bank v. Bank,* 62 Kan. 788, 795, 64 Pac. 634 (1901). In *Steele et al. v. State Bank et al.,* 116 Kan. 510, 227 Pac. 352 (1924), a person defrauded in a land sale was allowed a preferred claim over general creditors of a bank against land transferred to the bank as a result of fraud.

We hold that the trial court erred in denying Addis's claim of priority to the funds remaining from the sale of the Beltz land. As to the remainder of Addis's claim, he is a general creditor. In view

of our holding, it will be necessary for the trial court to redetermine the percentages due the general creditors.

Affirmed in part, reversed in part and remanded with directions.