CHASE MANHATTAN BANK,
Appellant,

v.

I. Townsend BURDEN, III, Appellee.

No. 83–669.

District of Columbia Court of Appeals.

Argued Jan. 31, 1984.

Decided March 27, 1985.

Jules W. Lindau, IV, Damascus, Md., for appellant.

William N. Fitzpatrick, Jr., Baltimore, Md., with whom Vicki L. Hawkins and Harvey R. Clapp, III, Baltimore, Md., were on the brief, for appellee.

Before FERREN, TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Chase Manhattan Bank, N.A. ("Chase"), filed this action against Peter A. Williams and I. Townsend Burden, III, the only partners in a limited partnership, for $15,000 plus punitive damages. The complaint alleged that Burden had received money from Chase to which he was not entitled. After hearing argument on Chase's and Burden's cross-motions for summary judgment, the trial court granted Burden's motion.[1] We affirm.

I

Burden was the limited partner and Williams the general partner in the partnership, which was established under the laws of the state of New York. The purpose of the partnership was to invest in a piece of real property in the city of New York.

Williams maintained two accounts at the Union Chelsea Bank of New York ("Union Chelsea"). On August 15, 1978, he instructed Union Chelsea to transfer $15,000 to Burden's account at National Savings and Trust Bank ("NS & T") in Washington, D.C. It is undisputed that this transfer represented a distribution of partnership

_____

1. The claim against Williams, a resident of New York, was dismissed for lack of personal jurisdiction.

capital to Burden in accordance with the partnership agreement. Union Chelsea in turn requested Chase, as a correspondent bank, to transfer the $15,000 into Burden's account at NS & T. Shortly thereafter, however, Union Chelsea notified Chase to cancel the transfer because there were insufficient funds in Williams' account.[2] It appears that Chase either ignored this notice or transferred the funds before receiving it, because the $15,000 did end up in Burden's account at NS & T.

Several months later, after Burden had spent most of the money, NS & T informed him that Chase was claiming it was owed $15,000 as a result of the erroneous transfer. Burden met with a representative of NS & T, and together they concluded that neither he nor NS & T owed Chase any money.

On August 14, 1981, just one day before the District of Columbia statute of limitations expired, Chase filed suit in the Superior Court against Williams and Burden, charging both of them with conversion and conspiracy, and seeking to recover the $15,000 plus punitive damages. On the undisputed facts as we have summarized them here, the trial court granted summary judgment for Burden. Chase's motion for reconsideration was subsequently denied.

## II

Summary judgment is appropriate "if the pleadings, depositions, [and] answers to interrogatories ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *see Swann v. Waldman*, 465 A.2d 844, 846 (D.C.1983); *Sturdivant v. Sea-*

board Service System, Ltd.*, 459 A.2d 1058, 1059 (D.C.1983).[3] The parties are apparently in agreement that there are no issues of material fact, and we recognize none. We therefore turn our attention to the two legal issues raised by Chase. First, Chase maintains that the court erroneously applied the law of conversion. Second, Chase claims that its motion for summary judgment should have been granted "on a theory of unjust enrichment or assumpsit for money had and received."

"Conversion has generally been defined as any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Shea v. Fridley*, 123 A.2d 358, 361 (D.C.1956) (footnote omitted); *accord, Blanken v. Harris, Upham & Co.*, 359 A.2d 281, 283 (D.C.1976). Chase argues that Burden exercised such unlawful control over its "personal property," the $15,000, after the transfer was made. We cannot agree.

Although there are no District of Columbia decisions on point, we find persuasive the holding of the Seventh Circuit in *Hayden Stone, Inc. v. Brode*, 508 F.2d 895 (7th Cir.1974). That case involved a claim by Hayden Stone, a brokerage firm, against Brode, a regular customer, for conversion of a debenture that Brode had ordered and Hayden Stone had delivered. Applying Illinois law on the subject of conversion,[4] which is similar to the law of the District of Columbia, *Shea v. Fridley, supra*, the court focused on the voluntary nature of the transfer and on its having been made in the normal course of business. It concluded that there had been no conversion:

2. According to an affidavit from a bank official, one of Williams' accounts was overdrawn. The other (from which Williams had requested that the transfer be made) had almost $23,000 in it, but most of that was in uncollected funds. Consequently, even though Williams technically had a balance in excess of $15,000, that money was not available for withdrawal or transfer on August 15.

3. Our standard of review is the same as that employed by the trial court when it initially considers a motion for summary judgment. *Cabaniss v. Cabaniss*, 464 A.2d 87, 90 (D.C.1983).

4. "To constitute conversion of a chattel there must be an unauthorized assumption of the right to possession or ownership." *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill.App.3d 978, 980–981, 276 N.E.2d 89, 90 (1971).

The facts as found will not support a cause of action in conversion for the simple reason that there was no "unauthorized assumption of the right to possession or ownership" as required by Illinois law.... The original transfer and delivery to Brode was voluntary and made in the normal course of business. There was no fraud involved in *this* transfer, and subsequent events cannot be relied upon since ownership had clearly passed to Brode when these events occurred.

*Id.* at 897 (citation omitted; emphasis in original); *see also T & L Leasing Corp. v. General Electric Credit Corp.,* 516 F.Supp. 1131, 1133 n. 2 (E.D.Pa.1981).

█ Under the analysis set forth in *Hayden Stone,* Chase's claim must fail. First, it voluntarily undertook to make the transfer before receiving any money from Union Chelsea, or even some sort of confirmation that the money would be forthcoming. Second, it is clear that the transfer was made in the regular course of Chase's business. Furthermore, unlike the defendant in *Citibank, N.A. v. Warner,* 113 Misc.2d 748, 449 N.Y.S.2d 822 (N.Y.Sup.Ct.1981), upon which Chase relies, Burden not only acted in good faith, but supplied details to both NS & T and Chase, and ultimately to the trial court, to support his belief that he was entitled to the money.[5] In short, like *Hayden Stone,* this case does not involve

the unlawful control by the transferee of someone else's property.[6]

Our conclusion is consistent with the holdings of other courts that no conversion occurs when a transferee takes property to which he is entitled. Such has been the result in some rather obvious cases,[7] and also in cases in which the transferee initially did not appear to have a well-defined contractual or statutory right to the property over which he asserted control. For example, in *Newman v. Silver,* 553 F.Supp. 485 (S.D.N.Y.1982), the defendant, an attorney, was held not to have converted a briefcase full of money because the plaintiff (like Chase) apparently had directed that the briefcase be delivered to the defendant. The court ruled that the attorney (like Burden) "had the right to possession by virtue of [plaintiff's] actions." *Id.* at 498. In *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc., supra* note 4, the defendant, which was using a truck sold by the plaintiff to a third party, did not know the vendee was in default on the contract of sale. The court held that there was no liability for conversion because, as in this case, "the record [did] not disclose any evidence to the effect that the defendant wrongfully acquired possession of the property or was retaining possession and exercising dominion over it in a wrongful, illegal or unlawful manner." 2 Ill.App.3d at 981–982, 276 N.E.2d at 91. Like the

---

**5.** In *Citibank v. Warner, supra,* the bank prevailed in an action for conversion against its customer, Warner, who spent money mistakenly credited to her account. Warner tried to defend by explaining that when she discovered more than $20,000 in her account, which usually had a much smaller balance, she simply believed that one of the contests she habitually entered had awarded her a prize. The court found her explanation lacking because she failed to shed any light on which contest she had allegedly won, how the sponsor knew which account to credit, and why she had never been notified of her winnings by the sponsor.

**6.** These facts also distinguish the case at bar from *Savoy Construction Co. v. Atchison & Keller, Inc.,* 388 A.2d 1221 (D.C.1978). Savoy was held liable for conversion of the tools of its subcontractor, which had stopped work and pulled its men off a construction site during a

financial dispute, leaving its tools behind. Savoy, unlike Burden, apparently did not assume before taking the property that the property belonged to it. Furthermore, the transferor in *Savoy* did not make the transfer voluntarily, nor could the takeover of the tools be said to have occurred in the ordinary course of business.

**7.** These obvious cases include those in which a finance company takes a vehicle from the possession of a defaulting buyer, *e.g., Thompson v. Ford Motor Credit Co.,* 550 F.2d 256 (5th Cir. 1977); a landlord is permitted by statute to enforce a lien on the property of a non-paying tenant, *e.g., Van Dorn v. Couch,* 21 Cal.App.2d 749, 64 P.2d 1197 (1937); or one co-owner takes exclusive possession of jointly owned property without the permission of the other, *e.g., Durback v. Fidelity & Guaranty Insurance Corp.,* 17 N.J.Super. 160, 85 A.2d 315 (1951).

automobile vendor in *Birkett L. Williams Co. v. Smith,* 353 F.2d 60 (5th Cir.1965), which failed in its conversion claim because it had consented to subsequent car sales by the defendant, appellant Chase, by making the transfer before receiving any money from Union Chelsea, obviously consented to Burden's dominion over the transferred funds. Chase knew that Burden would and did receive the money, but failed to do anything about it for several months. *See also Nelen v. Cowell,* 45 R.I. 465, 123 A. 897 (1924).

### III

Having determined that Burden properly prevailed on his motion for summary judgment as a matter of law, *Nader v. de Toledano,* 408 A.2d 31 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980), we need not dwell upon Chase's claim that its own motion should have been granted instead. The gist of Chase's argument is that unjust enrichment [8] would result if Burden did not make restitution of the $15,000.

"In situations of endless variety, courts have denied restitution because money paid by one party was received in good faith by the other in satisfaction of or as security for a valid claim against a third person." 3 G. PALMER, THE LAW OF RESTITUTION § 16.6, at 490–491 (1978) (footnotes omitted), quoted in *Equilease Corp. v. Hentz,* 634 F.2d 850, 853 (5th Cir.1981); *accord, Alden Auto Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp.,* 682 F.2d 330, 333 (2d Cir.1982); *Strubbe v. Sonnenschein,* 299 F.2d 185, 190–192 (2d Cir.1962); *Chicago Title & Trust Co. v. Walsh,* 34 Ill.App.3d 458, 463–465, 340 N.E.2d 106, 110–111 (1975); *Federated Mutual Insurance Co. v. Good Samaritan Hospital,* 191 Neb. 212, 212–216, 214 N.W.2d 493, 494–495 (1974); *First State Bank v. Peoples National Bank,* 254 Ore. 309, 313–317, 459 P.2d 984, 986–987 (1969); *Department of General Services v. Collingdale Millwork Co.,* 71 Pa.Commw. 286, 293–295, 454 A.2d 1176, 1180 (1983); *see* RESTATEMENT OF RESTITUTION § 2 comment a, §§ 14, 33, 110 (1937). We agree with the rationale of these cases and with Palmer's treatise and hold that restitution is not warranted here.

It is true that Burden may have had no legal claim to the $15,000, since Williams, as the general partner, had complete discretion under the partnership agreement to distribute partnership capital. However, Burden's contribution of capital, coupled with Williams' decision to disburse, gave Burden an equitable claim to that anticipated disbursement. *Cf. Estate of Smith v. Commissioner,* 292 F.2d 478 (3d Cir.1961), *cert. denied,* 368 U.S. 967, 82 S.Ct. 438, 7 L.Ed.2d 395 (1962) (shareholder becomes a creditor of the corporation when the board of directors, exercising its discretionary power, authorizes the payment of dividends); *Hercules Gasoline Co. v. Commissioner,* 147 F.2d 972 (5th Cir.), *aff'd,* 326 U.S. 425, 66 S.Ct. 222, 90 L.Ed. 177 (1945) (same). That claim was satisfied when he received the $15,000 from Chase. Moreover, Burden was a stranger to the events that resulted in the erroneous transfer of funds, and thus was "akin to a bona fide purchaser." *First State Bank v. Peoples National Bank, supra,* 254 Ore. at 317, 459 P.2d at 987 (citations omitted). Restitution being an equitable remedy, we will not order it when the result would be to make Burden suffer for someone else's mistake, especially when that someone else is a sophisticated financial institution like Chase. *See Goodbody & Co. v. Sultan,* 346 F.Supp. 1375 (S.D.Fla.1972).

---

**8.** Although Chase's use of the disjunctive in the argument that it "is entitled to summary judgment against Burden on a theory of unjust enrichment or assumpsit for money had and received" makes it appear that Chase presents two lines of argument, the two theories are essentially the same. *See Hillyard v. Smither & Mayton, Inc.,* 76 A.2d 166, 167 (D.C.1950) (an action brought in assumpsit for money had and received "is founded on the principle that no one ought unjustly to enrich himself at the expense of another").

Our refusal to grant restitution is further supported by the factual differences between the case at bar and several other cases in which restitution was required. In each of those cases the transferee, unlike Burden, either had no valid claim to the property or did not exercise good faith. For example, in *J.C. Penney Co. v. West*, 140 Ga.App. 110, 230 S.E.2d 66 (1976), an employee, upon terminating a short period of participation in his employer's profit-sharing plan, received a check that should have gone to a different employee with the same name and an obviously longer history of participation. The court held that the employer was entitled to restitution because the employee (unlike Burden) had no claim of right to the money and could not possibly retain it in good conscience. In *In re Radke*, 5 Kan.App.2d 407, 619 P.2d 520 (1980), the court held that the principle of unjust enrichment precluded the owner of a house from retaining the proceeds of a sales contract when her receiver had collected proceeds from the sale of the same house. Similarly, in *Snap-On Tools Corp. v. Roberts*, 35 Wash.App. 32, 665 P.2d 417 (1983), and *Messersmith v. G.T. Murray & Co.*, 667 P.2d 655 (Wyo.1983), the franchisee and the stockbroker's client, respectively, received more than they were due to receive, whereas Burden received only the money to which he was entitled. Burden was not unjustly enriched.

If anyone was liable to Chase, it may well have been Williams or the partnership, or perhaps Union Chelsea, or even all three. It is clear to us, however, that Burden was not liable to Chase on the facts of this case.

*Affirmed.*