No. 70,624

Kansas Farm Bureau Life Insurance Company, Inc., *Appellee*, v. Farmway Credit Union, *Appellant*.

(889 P.2d 784)

Review of the judgment of the Court of Appeals in an unpublished decision filed July 22, 1994.

Opinion filed February 3, 1995.

*Guy R. Steier*, of Frasier & Steier, of Beloit, argued the cause, and *Curtis A. Frasier*, of the same firm, was with him on the briefs for appellant.

*Douglas F. Martin*, of Porter, Fairchild, Wachter & Haney, P.A., of Topeka, argued the cause, and *Ronald W. Fairchild*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

Allegrucci, J.: Kansas Farm Bureau Life Insurance Company, Inc., (KFB) sued Farmway Credit Union (Farmway) to recover policy proceeds it paid under a mistaken belief that the insured was dead. The district court entered summary judgment in KFB's favor on the grounds that KFB was entitled to repayment on an implied contract theory and that its cause of action was not barred by the three-year statute of limitations because it did not accrue until KFB discovered that the insured was alive. The Court of Appeals affirmed, and we granted Farmway's petition for review.

Farmway raises two issues on appeal: (1) Was KFB entitled to repayment based on a contract implied due to mutual mistake? and (2) Was KFB's action barred by the statute of limitations?

In 1974, KFB issued a policy insuring the life of Keith J. Schreuder. That same year, Schreuder assigned the policy to Farmway as collateral. Around April 17, 1982, Schreuder disappeared. Following the disappearance, Farmway reinstated the policy and began paying the premiums.

In October 1988, Farmway contacted KFB to inquire about making a claim under the policy. In a letter dated January 10, 1989, KFB informed Farmway that the preferred method for establishing that the claim should be paid was through a court order of presumption of death.

On April 18, 1989, when there had been a seven-year interval since Schreuder's disappearance, Farmway filed a petition in the District Court of Mitchell County, Kansas, seeking a court order which decreed that the insured was presumed dead. The district court's journal entry of May 17, 1989, decreed that Schreuder was declared to be dead and established the date of death as April 17, 1982.

Farmway submitted a claim to KFB for the policy proceeds. On May 26, 1989, KFB issued to Farmway a check for $86,221, which represented the face amount of the life insurance policy plus interest from the date of death. On June 5, 1989, KFB issued to Farmway a check for $11,721.71, which represented a refund of premiums plus interest paid on the policy after the date of death.

In April 1992, KFB learned that Schreuder was alive. On June 12, 1992, KFB demanded that Farmway return the money which had been paid to it. Farmway refused; KFB filed its petition in district court on August 21, 1992.

On cross-motions for summary judgment, the district court ruled in KFB's favor. It ordered Farmway to pay KFB $97,942.71 plus interest from June 12, 1992, when KFB first demanded return of the money.

We first determine if KFB was entitled to repayment based on a contract implied due to mutual mistake. Examination of KFB's petition in the district court shows that its original theories of recovery were unjust enrichment and mutual mistake of fact/implied contract. The district court's decision to grant KFB's motion

for summary judgment was based on its theory of mutual mistake of fact and implied contract. The district court concluded that KFB's motion for summary judgment on the theory of unjust enrichment was moot. In the Court of Appeals, KFB argued that the district court's decision in its favor could be affirmed on the ground of unjust enrichment under the right-for-the-wrong-reason principle. The Court of Appeals stated that payment by mistake, implied contract, and unjust enrichment "are different names for what is essentially the same theory of recovery." This appears to be a correct statement. The Court of Appeals further stated:

"An action to recover money paid to the defendant under a mistake of fact sounds in quasi contract, and the court will imply a promise to repay on the part of the defendant. *Westamerica Securities, Inc. v. Cornelius*, 214 Kan. 301, 310, 520 P.2d 1261 (1974). This court has explained:

'[I]t should be noted that a variety of similar terms are engaged by those dealing with the present subject, including the following: quasi-contracts, restitution, constructive contracts, and unjust enrichment. In this regard, the following statement found in 17 C.J.S., Contracts § 6, p. 571, is relevant:

" '[T]he terms 'restitution' and 'unjust enrichment' are modern designations for the older doctrine of quasi contracts, and the substance of an action for 'unjust enrichment' lies in a promise, implied by law, that one will restore to the person entitled thereto that which in equity and good conscience belongs to him.' " *United States Fidelity & Guaranty Co. v. Marshall*, 4 Kan. App. 2d 9, 10, 601 P.2d 1169 (1979).

Accord *In re application of Radke*, 5 Kan. App. 2d 407, Syl. ¶ 1, 619 P.2d 520 (1980)."

In the Court of Appeals, Farmway's main contention was "that there was no mistake of fact which would require repayment. It argue[d] the parties effected a compromise and settlement when KFB agreed to pay Farmway's claim on the life insurance policy and that KFB is bound by the terms of the settlement." On this question the district court determined that Farmway had not come forward with evidence necessary to establish its claim, and the Court of Appeals agreed. Farmway contended, and the Court of Appeals rejected the claim, that compromise was shown by Schreuder's uncertain status, by the "in full settlement of all claims" boilerplate on KFB's checks, and by Farmway's unilateral

belief that the policy might contain a double indemnity provision. There is no reason to revisit these conclusions. The Court of Appeals' rationale is sound, and, although Farmway does not entirely relinquish the argument, its primary focus has shifted in this appeal.

In its petition for review and in its supplemental brief in this court, Farmway layers the compromise-and-settlement argument with the contention that KFB is not entitled to recovery because, in relying on the court-ordered presumption of death, it assumed the risk that Schreuder was alive. This argument was stated and dismissed by the Court of Appeals in two brief paragraphs. The Court of Appeals stated that it was following the majority rule:

> "In general, courts which have considered payment of life insurance proceeds when the insured's death is presumed from extended absence or other circumstances have allowed recovery by the insurer upon discovery that the insured was still alive. See *Alexander Hamilton Life Ins. Co. v. Lewis,* 550 S.W.2d 558 (Ky. 1977); *Farmers New World Life Ins. v. Jolley,* 747 S.W.2d 704 (Mo. App. 1988); *Masonic Life Assn. v. Crandall,* 9 App. Div. 400, 41 N.Y. S. 497 (1896); *Pilot Life Ins. Co. v. Cudd,* 208 S.C. 6, 36 S.E.2d 860 (1945). These cases rely on the equitable rule which allows recovery of money paid under a mutual mistake of fact."

Neither of the more recent cases stands for the proposition for which it is cited by the Court of Appeals. In the Kentucky case, *Alexander Hamilton Life Ins. Co. v. Lewis,* 550 S.W.2d 558 (Ky. 1977), the question was whether the beneficiaries of life insurance policies had to repay all or only a part of the proceeds which were mistakenly paid in reliance on a judgment of presumption of death. The question whether the insurance company was entitled to any repayment previously had been answered in the insurer's favor in a case by the same name reported at 500 S.W.2d 420 (Ky. 1973). In the earlier case, the insurer filed a motion under a Kentucky court rule to vacate and set aside the judgment declaring that the insured was presumed dead, which was denied by the trial court. Based on its construction of the court rule, the appellate court reversed and remanded. The grounds for vacating the judgment under the court rule were newly discovered evidence and extraordinary facts which would justify relief. 500 S.W.2d at 421-22. In other words, the decision allowing the in-

surer to recover was based on specific Kentucky provisions for vacating a judgment rather than on a general principle which would be transferrable to a claim in the courts of this state.

In the Missouri case, *Farmers New World Life Ins. v. Jolley*, 747 S.W.2d 704, 705 (Mo. App. 1988), the insurer's recovery was based on a "Release and Indemnification Agreement" wherein the beneficiary agreed to repay the proceeds plus interest, costs, and attorney fees if it were proved that the insured had not died. When the insurer was unable to fully recover from the beneficiary through execution, it sued her attorney to recover the amount paid to him in contingent fees. The Court of Appeals affirmed summary judgment in the attorney's favor.

Both the New York and the South Carolina cases do support the principle for which they were cited. The basic premise of the New York case is the rule that money paid by an insurer under the mistaken belief that the insured was dead may be recovered. *Masonic Life Assn. v. Crandall*, 9 App. Div. 400, 404, 41 N.Y S. 497 (1896). The authorities cited for the rule were three treatises on equity jurisprudence and several New York cases.

In the South Carolina case, *Pilot Life Ins. Co. v. Cudd*, 208 S.C. 6, 36 S.E.2d 860 (1945), the beneficiary was paid the proceeds of a life insurance policy on a sailor whose merchant ship disappeared off Ceylon during wartime. When it was learned that the sailor was a Japanese prisoner of war, the insurer demanded repayment. The New York case discussed in the preceding paragraph was cited as authority for the "elementary" proposition that repayment could be compelled where there had been a mistake of fact. 208 S.C. at 15. In addition to South Carolina cases, the court relied on an interesting Pennsylvania case in which the roles were reversed. The beneficiary, who had been paying premiums for 13 years while the insured had not been heard from, entered into an arrangement with the insurer where she surrendered the $6,000 policy in exchange for a paid-up $2,500 policy. When it was shown a short time later that the insured had died before the arrangement, the insurance company refused recovery on the greater policy. The Pennsylvania Supreme Court decided that the beneficiary was entitled to $6,000 on the ground that the

policies had been exchanged on the basis of the mistaken assumption that the insured was alive. See 208 S.C. at 16-17. The South Carolina court's comment was: "The logic of this case is inescapable." 208 S.C. at 17.

Farmway would distinguish the cases cited by the Court of Appeals because "they do not involve the application of the presumption of death from extended absence." In Farmway's view, the presumption of death signifies uncertainty.

Relating the concept of uncertainty to compromise and settlement, Farmway cites cases which it represents as examples of this court's refusing to set aside settlements on the ground of mutual mistake where the mistake related to " 'one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest.' " *In re Estate of Thompson*, 226 Kan. 437, 441, 601 P.2d 1105 (1979) (quoting 15A Am. Jur. 2d, Compromise and Settlement § 33, p. 806). Application of this principle to the present case, of course, depends on the parties' having entered into a settlement. As we have seen, the district court found that Farmway had failed to come forward with satisfactory evidence of a settlement, and the Court of Appeals agreed. Farmway has presented no argument in this court which casts new light on the question.

We agree that the present case is distinguishable because of the presumption of death. However, the distinction lies in the purpose and effect of a presumption of death determination under K.S.A. 59-2704. K.S.A. 59-2704 sets out circumstances in which "[a]n absentee shall be presumed to be dead *for the purposes of this act.*" (Emphasis added.) Those circumstances are:

"(1) the absentee shall remain unheard from by those persons most likely to hear from said absentee for a period of not less than seven (7) years, and

"(2) one or more persons who had a bona fide motive for locating the absentee have conducted a diligent search for the absentee in all places where said absentee's presence could reasonably be expected."

K.S.A. 59-2704 is part of the Estates of Absentees Act, K.S.A. 59-2701 *et seq.* The purpose of the Act is to "administer, in accordance with the provision of this act, the property within this state of . . . any person who has disappeared and remains un-

heard from by the persons most likely to hear from him or her." K.S.A. 59-2701. A trustee may be appointed to administer the missing person's estate under K.S.A. 59-2702 and, pursuant to K.S.A. 59-2705(b):

> "Upon the petition of any person interested in the estate of an absentee presumed to be dead, and on proof thereof . . . the district court shall proceed to administer the estate of such absentee as if such absentee was known to have died on the date of the filing of said petition."

This statute further provides that if the absentee returns within five years of the entry of the order of final settlement, "any order made during such administration shall be subject to being set aside on such absentee's application for good cause shown" and that each distributee shall post a bond conditioned on such absentee's return within five years and' making the claim thereto. K.S.A. 59-2705(d)(1) and (2).

In *In re Estate of Newland,* 240 Kan. 249, 257, 730 P.2d 351 (1986), we said:

> "While K.S.A. 59-2702 applies to probating the estate of a missing person which is being wasted, the purpose of K.S.A. 59-1508 is to enable a person entitled to an unclaimed distributee's share to appear and prove he or she is entitled to that share. Such is the situation in the present case. As in *Ruppenthal* [*v. Maag*, 153 Kan. 588, 113 P.2d 101 (1941)], this is *not* a case where money or other personal property, or real estate, were being wasted or lost for lack of someone to take care of it; here we have an ongoing probate proceeding, thus, K.S.A. 59-2702 does not apply."

In the present case, although the petition seeking a court order that Schreuder was presumed dead was filed pursuant to K.S.A. 59-2704, it was not filed for the purpose of administering Schreuder's estate but, rather, to obtain the death benefits under the insurance policy. Neither party contends that the Mitchell District Court order obligated KFB to pay the insurance proceeds to Farmway. The sole purpose for obtaining the order is to administer the estate of an absentee under K.S.A. 59-2705(b), and it has no legal significance independent of the Estates of Absentees Act. We further note that the order entered by the Mitchell District Court did not determine that Schreuder was presumed to be dead but, instead, that he "is hereby declared to be deceased."

The district court did not have the authority to make such a determination under 59-2704.

The Restatement of Restitution § 11(1) (1936) provides: "A person is not entitled to rescind a transaction with another if, by way of compromise or otherwise, he agreed with the other to assume, or intended to assume, the risk of a mistake for which otherwise he would be entitled to rescission and consequent restitution." The following illustration is given:

"A is the beneficiary of a life insurance policy issued by the B Company upon the life of C. In 1923, C disappears and is not heard of for five years. B pays the face value of the policy to A, although under no legal obligation so to do and with a realization that C's death is doubtful. A year later, it is learned that C is alive. In the absence of knowledge or suspicion of facts by A which, at the time of payment by B, A should have revealed, B is not entitled to restitution." Comment a, Illustration 2.

Farmway cites *Jolley*, 747 S.W.2d 704, *Insurance Co. v. Chittenden*, 134 Iowa 613, 112 N.W. 96 (1907), and *A.O.U.W., Appellant v. Mooney*, 230 Pa. 16, 79 A. 233 (1911), as cases involving application of the principle stated in § 11(1) of the Restatement of Restitution. Although the salient tenet of the Restatement section is nonrecoverability of money paid by one who assumes the risk of a mistake, in the Missouri and Pennsylvania cases, the beneficiary was required to repay life insurance proceeds paid when the insured was alive. In each, repayment was required pursuant to an agreement or bond given to cover the eventuality of the insured's being alive.

In *Jolley*, the beneficiary of two insurance policies on the life of an absentee sued the insurer, and the suits were settled by the parties' executing a release and indemnification agreement which required the beneficiary to repay the proceeds plus interest, costs, and attorney fees if it were established that the insured was alive. The insured was alive, execution of judgment against the beneficiary did not satisfy the insurer's loss, and the insurer sued the beneficiary's attorney, seeking restitution of his fee, which had been paid out of the policy proceeds pursuant to a contingent fee contract. In denying recovery from the attorney, the court stated that the insurer's "rights are governed entirely by the Release and

Indemnification Agreement which provides a contractual right to recovery from [the beneficiary] alone." 747 S.W.2d at 708. The Restatement section was cited for the proposition that risks must be covered by the contract. Thus, the beneficiary, who had entered into an agreement with the insurer, was required to repay, but the attorney, who received a portion of the proceeds but was not a party to the agreement, did not.

In *Mooney*, benefits were paid on a presumption of death which "arose" after the insured had been absent for more than seven years, and the insurer took from the beneficiary a bond to insure repayment in case the insured was alive. 230 Pa. at 18. With regard to the transaction, the court stated that it "is fairly to be regarded as a payment by the [insurer] in compromise of what at the time was a claim not free˙from doubt, and that such payment under the circumstances was a sufficient consideration for the bond." 230 Pa. at 21. Under the terms of the bond, the beneficiary was required to refund the proceeds. 230 Pa. 22.

In *Chittenden*, after the insured had been absent for more than seven years, "[p]roper proceedings were had" under which an administrator of the insured's estate was appointed. 134 Iowa at 614. As proof of death, the administrator furnished statements of the time and place of disappearance, the absence of an explanation for the absence, and the existence of "pleasant" family relations. 134 Iowa at 614-15. With regard to the effect of this proceeding, the Iowa court stated:

"[T]he administration was not conclusive as to the fact of his death, but only as to the fact of his absence and the concealment of his whereabouts from his family for seven years. But the facts which justified the administration would also as evidence have established a right of action on the policies by the administrator and the assignees to recover the insurance money, for those facts would have been sufficient evidence of death to sustain a judgment based on that fact." 134 Iowa at 617.

Faced with the threat of litigation, the insurer tendered drafts for the policy amounts "with the condition that the administrator and assignees should give a bond of indemnity to the [insurance] company for the return of the money in case it should be subsequently discovered that [insured] was not dead at the time of this settle-

ment." 134 Iowa at 615. The condition was refused, and the insurer paid "without further insistence upon this condition." 134 Iowa at 615. When it was proved that the insured was alive and the insurer sought repayment, the court concluded that there should be no recovery. It reasoned that a judgment obtained by the administrator would have been conclusive and "that a settlement by which the money was paid for the purpose of avoiding a suit in which such a judgment might have been rendered is also conclusive." 134 Iowa at 618.

Here, it was KFB who directed Farmway to obtain an order pursuant to 59-2704 in order to process its claim under the insurance policy. KFB chose to pay the policy proceeds to Farmway based upon the presumption of death order and not on the mistaken fact that Schreuder was dead. Schreuder's death was not a fact. KFB was under no legal obligation to pay the proceeds to Farmway, and Schreuder's death remained in doubt after the presumption of death was entered by the district court pursuant to 59-2704. The court-ordered presumption of death is not more than a presumption. It is an integral part of the procedure that allows interested parties to prevent waste or administer an absentee's estate. KFB chose not to proceed under the Estates of Absentees Act but, rather, paid the insurance proceeds directly to Farmway. KFB did not require Farmway to execute a restitution or indemnity agreement in the event Schreuder was not dead. We conclude that KFB assumed the risk that Schreuder was not dead and is not entitled to repayment from Farmway. Having so concluded, it follows that the district court erred in granting summary judgment to KFB and not to Farmway. In view of this holding, we need not consider Farmway's second issue that KFB's action is barred by the statute of limitations.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed, and the case is remanded with directions to grant summary judgment to Farmway.